# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 1:18-cr-02945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS – NO CRIME

THIS MATTER comes before the Court upon Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton's Motion to Dismiss – No Crime ("Motion") (Doc. 469). Defendants object to the kidnapping charges in Counts 6 and 7 of the Superseding Indictment (Doc. 85) on the argument that since Siraj ibn Wahhaj was John Doe's father and was present with John Doe for the entire duration of events, John Doe was not kidnapped within the meaning of the statute. Doc. 469 at 3. The United States responds that because John Doe and his mother, Hakima Ramzi, did not consent to John Doe's removal from his mother's home in Georgia and transport to New Mexico, the actions of Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton still constitute kidnapping. Doc. 487 at 7. Having reviewed the parties' submissions and the applicable law, the Court finds that Defendants' motion is not well-taken and therefore DENIES it.

## BACKGROUND

Defendants[1] are alleged to have kidnapped a three-year-old child, John Doe—the son of defendant Siraj ibn Wahhaj—from the child's mother and brought him to a remote compound in Amalia, New Mexico. Doc. 1 ¶ 17. It is alleged that Defendants, John Doe, and several other children lived at the compound for a period of months, during which Defendants performed repeated, demanding prayer rituals on John Doe. *Id.* ¶¶ 17, 19. According to a report from one of the other children present on the compound and a diary entry from one of the defendants, John Doe died during one of these prayer rituals. *Id.* ¶ 19. This alleged conduct led to kidnapping charges against Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton. Doc. 85 at 8–9.

## LEGAL STANDARD

To be legally sufficient, an indictment must "(1) contain[] the essential elements of the offense intended to be charged, (2) sufficiently apprise[] the accused of what he must be prepared to defend against, and (3) enable[] the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Kilpatrick*, 821 F.2d 1456, 1461 (10th Cir. 1987) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)). If an indictment does not contain the essential elements of the crime charged, the court should dismiss it. *Id.* at 1462. On a motion to dismiss an indictment, the Court takes the allegations in the indictment as true to determine if they are "sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).

## ANALYSIS

---

[1] Defendant Siraj ibn Wahhaj is John Doe's father and therefore is not charged with kidnapping. *See* Doc. 85 ¶ 35. He does not join in the present Motion.

The Motion centers on the kidnapping charges leveled against the defendants, other than Siraj ibn Wahhaj. The federal kidnapping statute with which Defendants have been charged is 18 U.S.C. § 1201. The language of this statute reads:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; [. . .]
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a). The Tenth Circuit has boiled down the elements of this offense to "(1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully." *United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998). Because the statute explicitly excludes kidnapping of a minor by the minor's parent, Siraj ibn Wahhaj, the child's father, was not charged. The question of whether a minor has a recognizable will depends on the facts of the case; when the victim is too young or otherwise lacks capacity to consent, courts look to the consent of the minor's parents. *Chatwin v. United States*, 326 U.S. 455, 460 (1946) ("If the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim.").

The Motion essentially espouses the following logic: If the child's father was present with the child the whole time and consented to the transportation of the child, the transportation of the child from Georgia to New Mexico could not be a kidnapping. This logic relies on the factual assumption that the child lacked a recognizable will; *Chatwin* only considers the will of the parents or guardian if the victim is incapable of having a recognizable will.

3

John Doe was three years old during the operative time period. At this stage, it is undetermined whether he had a recognizable will. The United States will argue that he did (Doc. 487 at 10), while Defendants implicitly argue that he did not based on their reliance on his father's will (Doc. 469 at 4–6). Because John Doe's capacity to consent is in dispute at this stage, the Court cannot dismiss the kidnapping charges in the indictment simply based on the assumption that John Doe had no recognizable will. *See Chatwin*, 326 U.S. at 462 ("There must be competent proof beyond a reasonable doubt of a victim's mental incapacity in relation to the very acts in question before criminal liability can be sanctioned in a case of this nature [kidnapping]."); *United States v. Kilpatrick*, 821 F.2d 1456, 1462 n.4 (declining to dismiss indictment when points in dispute "are to be tested at trial"). That matter is for the jury.

Even if it were beyond dispute that John Doe lacked a recognizable will, that would not necessarily lead to dismissal of the kidnapping charges. As outlined above, in the event that the kidnapping victim lacks a recognizable will, the Court looks to the will of the victim's parents or guardians. The United States argues that the child's mother, Hakima Ramzi, did not consent. Doc. 487 at 7, 10. Therefore, the operative question is whether, legally, one parent's consent is sufficient to overcome kidnapping charges against a third party when the other parent has not consented.

Certainly, Siraj ibn Wahhaj is one of the child's parents,[2] and as such, cannot be—and is not—charged with the kidnapping. *See* 18 U.S.C. § 1201(a) (excluding from the scope of this

---

[2] The United States intends to demonstrate at trial that Siraj ibn Wahhaj was under a court order to return the child to Georgia as of December 18, 2017, so he no longer had legal custody over the child. Without getting too far into the details of this argument before the parties have had the chance to fully brief it, the Court notes that the statutory language makes only one exclusion from the definition of a parent: "As used in this section, the term 'parent' does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order." 18 U.S.C. § 1201(h). The briefing is unclear at this stage as to whether the December 18, 2017 order would fall within the scope of this section.

crime a parent's kidnapping of his or her own child). But his presence, and even his consent, does not necessarily shield the other defendants from kidnapping charges for their conduct toward John Doe. Other kidnapping cases involving a child's parent and stepparent, for example, have led to convictions only of the stepparent even when the parent was also involved. *See United States v. Sheek*, 40 F.3d 1245, 1994 WL 620301, at *1–3 (4th Cir. 1994) (unpublished disposition) (kidnapping indictment should not be dismissed against stepparent when he did not parent the minor victims and had never met them, even though children's biological mother was also involved in the kidnapping); *Miller v. United States*, 123 F.2d 715, 716–18 (8th Cir. 1941), *rev'd on other grounds*, 317 U.S. 192 (1942) (defendant and his wife together kidnapped his wife's illegitimate child; wife, as mother of the child, was directed a verdict of not guilty, but defendant was found guilty). That is, these Fourth and Eighth Circuit cases find that the nonparents can still be charged and convicted of kidnapping even when the nonparent and kidnapping parent take action together.

Defendants argue against this interpretation because they claim that considering parents "immunized" from the kidnapping statute is incorrect; parents, they argue, are entirely excluded from the act's scope. Doc. 540 at 5–6. Because parents taking their own children do not fall under the statute's purview, Defendants claim that nonparents who accompany a kidnapping parent should be similarly exempt. *Id.* at 6. As an initial matter, at least one case supports the interpretation that parents *are* immunized from suit. *See United States v. Boettcher*, 780 F.2d 435, 436 (4th Cir. 1985) ("The Government has not indicted the father for the earlier abduction, accepting that he is immune from federal prosecution under section 1201."). Ultimately, however, the Court finds the immunized-or-exempt distinction unnecessary at this juncture. Even if parents are exempt, it does not necessarily follow that accompanying nonparents will be exempt as well. The more pertinent issue is that Defendants do not find the Fourth and Eighth Circuit interpretation

of the kidnapping statute persuasive. However, Defendants provide no case law on point to support their own view. Indeed, neither party cites, and the Court cannot find, Tenth Circuit case law directly opining on the question of one parent's consent and one parent's nonconsent when a third-party nonparent kidnaps a child.

Having considered the logic that the Fourth and Eighth Circuits espouse in *Sheek* and *Miller*, the Court finds these cases persuasive. The federal kidnapping statute was not meant to address parents who kidnapped their own children during times of marital difficulty. *Miller*, 123 F.2d at 716; *see also United States v. Boettcher*, 780 F.2d 435, 437 (4th Cir. 1985) (affirming dismissal of indictment for mother who kidnapped *back* her children from their father, who had kidnapped them from her first). But that protection for parents does not apply to nonparents who get involved in these domestic matters—or at least, the text makes no mention of it and the Court has found no case law in support of the idea. Therefore, the Court declines to extend textual protections specifically written for parents to the nonparent defendants in this case.

Additionally, the question of Siraj ibn Wahhaj's consent is not yet entirely resolved. Parental consent for a child to go with another adult is invalid when it is the result of inveiglement or other deceitful means. *See United States v. Easton*, 854 F.3d 922, 923–24 (8th Cir. 2017) (defendants inveigled adoptive parents of minor kidnapping victims by providing false documentation of qualifications to care for foster children). The United States expresses its intent to argue that Siraj ibn Wahhaj's consent was

> tainted by Jany Leveille's representation that she was JOHN DOE's biological mother, that JOHN DOE was Jesus Christ, that she was Mary, Mother of God, that JOHN DOE's real mother practiced black magic, and that JOHN DOE could be cured of his disabilities only by taking him from his mother, depriving him of his medication, and subjecting him to religious rituals.

Doc. 487 at 10. Therefore, if Jany Leveille used her codefendants' religious faith to manipulate them and cause Siraj ibn Wahhaj to consent to conduct with his child that he would not have agreed to had he known the truth—that is, in short, if she inveigled him within the meaning of the kidnapping statute—that could invalidate any consent he may have given. Currently, of course, any such theories are speculative, and the parties will have the full opportunity to explain or discredit these arguments at trial.

In summary, Defendants' argument that a kidnapping was not possible because John Doe's father was with him throughout his time away from home is flawed. If John Doe is capable of consent and did not consent, the nonparent codefendants could be found guilty of kidnapping. In the alternative, if John Doe is not capable of consent and Siraj ibn Wahhaj (father) consented but Hakima Ramzi (mother) did not consent, the nonparent codefendants could still be found guilty of kidnapping. Additionally, it is possible that Siraj ibn Wahhaj's consent was obtained through inveiglement or other deceitful means. Whether these theories are accurate is a matter for trial, and the court takes no opinion on the merits of these arguments except to observe that they are sufficient to allow the matter to go before the jury.

The Motion to Dismiss – No Crime (Doc. 469) is DENIED.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE