IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 1:18-cr-02945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE GOVERNMENT EXPERT WITNESS TESTIMONY**

THIS MATTER comes before the Court upon Defendants' Motion to Exclude Government Expert Witness Testimony ("Motion") (Doc. 467). Defendants seek to exclude testimony by Dr. John Phillips regarding the cause of death of John Doe, the child whom several of the defendants in this case are charged with kidnapping. Doc. 467. Their objection to Dr. Phillips' testimony is that Dr. Phillips is not a forensic pathologist, but a pediatric neurologist, and did not base his conclusions on reliable principles and methods. *Id.* In the alternative, they argue that Dr. Phillips' testimony is substantially more prejudicial than probative and therefore should be excluded under Federal Rule of Evidence ("Rule") 403. *Id.* Having reviewed the parties' submissions and the applicable law, the Court finds that Defendants' motion is well-taken in part: Dr. Phillips is not qualified to provide an expert opinion about the specific cause of John Doe's death. However, he is qualified to utilize his expertise in the area of pediatric neurology to discuss the medical

implications of other evidence and testimony at issue in this case. The Court therefore GRANTS IN PART Defendants' Motion.

## BACKGROUND

The allegations in this case are lengthy, and the Court reproduces here only what is necessary to address the Motion. Allegedly, Defendants[1] kidnapped a three-year-old child, John Doe—the son of one of the defendants—and brought him to a remote compound in Amalia, New Mexico. Doc. 1 ¶ 17. It is alleged that Defendants, John Doe, and several other children lived at the compound for a period of months, during which Defendants performed repeated, demanding prayer rituals on John Doe. *Id.* ¶¶ 17, 19. According to a report from one of the other children present on the compound and a diary entry from one of the defendants, John Doe died during one of these prayer rituals. *Id.* ¶ 19.

Particularly relevant to the present dispute over expert testimony is the fact that John Doe was born with Hypoxic Ischemic Encephalopathy ("HIE"). *Id.* ¶ 4 (referring to John Doe as "John Doe 1" to distinguish him from other minors involved). HIE is a disability which can lead to developmental delays, seizures, and other serious medical issues. *Id.* Some of the issues that will likely arise at trial include questions of whether the child was given his anticonvulsant medication and otherwise provided adequate care for his disabilities during his time on the compound. The question of whether the kidnapping caused John Doe's death is of high importance because this charge holds a mandatory minimum of life in prison if the kidnapping causes a death. *See* 18 U.S.C. § 1201(a).

## LEGAL STANDARD

---

[1] Defendant Siraj Ibn Wahhaj is John Doe's father and therefore is not charged with kidnapping. *See* Doc. 85 ¶ 35.

I.      Rule 702

The Federal Rules of Evidence permit certain individuals to be qualified as "expert[s]" by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Experts may testify in the form of an opinion if they can provide "scientific, technical, or other specialized knowledge" to assist the trier of fact to understand the evidence, their opinion is "based on sufficient facts or data," and the testimony is founded on "reliable principles and methods" that have been "reliably applied" to the present case. *Id.; see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590–93 (1993). More generally, the rule serves a "gatekeeping" requirement "to ensure the reliability and relevancy of expert testimony," and the court need not rigidly follow the *Daubert* requirements if they do not represent a reasonable measure of the expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Generalized expertise is not enough; an expert must possess "skill, experience or knowledge in that particular field" to provide a proper foundation for the trier of fact to understand the evidence, not simply to "parrot the results" of a model or analysis. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

II.     Rule 403

Separate from the question of expert testimony is Rule 403, which provides the court with general authority to exclude evidence if its probative value is "substantially outweighed" by its unfairly prejudicial effect. Fed. R. Evid. 403. Unfair prejudice is not simply evidence that damages one side's case. *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008). Rather, it is the tendency for evidence to "make[] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Otuonye*, 995 F.3d 1191, 1207 (10th Cir. 2021) (quotation omitted).

ANALYSIS

I.        Rule 702

Defendants argue that Dr. Phillips is not qualified to opine on John Doe's cause of death because he is not trained as a forensic pathologist. Doc. 467 at 6. The United States seems to agree that Dr. Phillips cannot validly give an opinion about what constituted John Doe's cause of death. *See* Doc. 494 at 10–11 ("The closest Dr. Phillips gets in his report (and would get in his testimony) to JOHN DOE's cause of death is, based on his extremely qualified medical knowledge, to opine on what was likely happening medically to JOHN DOE based on the descriptions of his death provided in other evidence . . .").

To give opinion testimony, an expert must be qualified in the particular area he seeks to address. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Dr. Phillips is not trained in forensic pathology, and his curriculum vitae ("CV") does not indicate any experience in forensic pathology, the performance of autopsies, or other work relevant to determining cause of death. *See* Doc. 494-1 (Dr. Phillips' CV), Doc. 467 at 1 (briefly summarizing Dr. Phillips' experience and credentials). Therefore, he is not equipped to testify as to the specific cause of John Doe's death, and the Court will not allow him to do so.

However, the Court notes that the majority of Dr. Phillips' report addresses John Doe's medical history, particularly focusing on the effects of his HIE condition and the various therapies and medical interventions that the condition required. *See generally* Doc. 467-1. Even the discussion labeled "[John Doe's] cause of death" only discusses the possibilities mentioned in other sources of evidence: a generalized seizure during a prayer ritual, airway obstructions, and so on. *Id.* at 8–9. Essentially, what Dr. Phillips is doing in the report is providing a medical explanation for the possible causes of death that other sources have identified. If John Doe died of

a seizure, Dr. Phillips explains, here is what could have triggered it and what the physiological process would have looked like. If he didn't have a seizure, Dr. Phillips continues, here are the likely other explanations for his death based on his medical condition and associated physical weaknesses. His report gives medical context to help the factfinder consider the testimony of the lay witnesses who observed John Doe's death.

This explanation is certainly within Dr. Phillips' authority to provide. Dr. Phillips has over two decades of experience as a child neurologist, is a tenured professor at the University of New Mexico Health Center, and has worked with many children with similar conditions to John Doe. *Id.* at 1. To the extent that Dr. Phillips' testimony will provide an explanation of John Doe's medical condition, physical vulnerabilities, and *likely, hypothetical* responses of a person with these vulnerabilities to various experiences such as deprivation of medication, malnutrition, stress, and certain body positioning (such as during the alleged prayer rituals), Dr. Phillips is qualified to give this testimony based on his expertise in the area of pediatric neurology. However, Dr. Phillips is not qualified to testify as to what *actually* happened based on the condition of John Doe's remains, as that testimony would overstep into the purview of forensic pathology, an area outside Dr. Phillips' expertise. For example, Dr. Phillips may testify as to what would likely happen to a child with John Doe's conditions if that child did not receive the proper medication, but Dr. Phillips may not testify as to whether John Doe himself actually received that medication; the latter is a question that relies on a forensic analysis of the chemicals in John Doe's tissues. Dr. Phillips may testify as to the likely outcome of a child with John Doe's conditions being placed under stress in prayer positioning, but he may not testify as to whether John Doe was actually placed in this position.

This analysis of hypotheticals is far from "parroting the government's case," as Defendants describe it. Doc. 530 at 3. Dr. Phillips is not qualified to—and would not, according to the United States—opine as to John Doe's *actual* cause of death. Dr. Phillips was not present at the compound and did not see the alleged prayer rituals take place. Indeed, he did not know John Doe while the child was alive, and he has not examined the remains. Applying his expertise in John Doe's disability to the circumstances posed by others, however, is a valuable contribution to assist the finder of fact in understanding the medical implications of lay witness testimony. If the jury does not find the lay witness testimony credible, it follows that the jury will disregard Dr. Phillips' analysis of the medical implications associated with what the lay witnesses claim to have seen.

To the extent the hypothetical nature of Dr. Phillips' testimony may cast any doubt on his conclusions, the issue is one of weight, not of admissibility. Expert testimony need not include firsthand observation. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) ("To the extent the lack of firsthand experience by either expert is relevant, it goes, as the district court ruled, to the weight and not the admissibility of the testimony."). Indeed, Defendants concede Dr. Phillips' qualifications in this area: "Since he is an expert in pediatric neurology, he may testify to a hypothetical question, assuming it is relevant and not unfairly prejudicial, that *if* [John Doe] died when the government thinks he died, he may have been suffering from the neurological conditions that are identified in his medical records." Doc. 530 at 6. His ability to apply his knowledge to hypotheticals involving John Doe, a patient he has never seen, may fairly be judged in cross-examination.

Because the Court resolves the question of Dr. Phillips' ability to testify regarding John Doe's cause of death based on Dr. Phillips' qualifications, it need not reach the issue of his methodology. *See* Doc. 467 at 7.

## II.     Rule 403

In the alternative, Defendants argue that Dr. Phillips' report, and therefore testimony, would be substantially more unduly prejudicial than probative and should be excluded pursuant to Rule 403. Doc. 467 at 10. They assert that language in the report, such as the possibility that John Doe was "forced down during the prayer rituals in the supine position, crying against his will," is likely to produce an emotional reaction and is not founded in science because Dr. Phillips only heard from others that John Doe was placed in this position. *Id.* The United States responds that the testimony Dr. Phillips will give is highly probative because it directly addresses the question of whether the kidnapping resulted in John Doe's death. Doc. 494 at 18.

The probative value of Dr. Phillips' report is clear. Notwithstanding his inability to opine as to the actual cause of death, Dr. Phillips brings a wealth of experience and insight regarding John Doe's medical conditions and disabilities. Understanding John Doe's vulnerabilities as a three-year-old with HIE is critical for the jury to determine whether his death was a result of his kidnapping. Unless jurors have a medical background or experience with children with neurological conditions, they will likely lack a mental framework for what John Doe's medical needs were and what effects may have resulted if those needs were not met.

Furthermore, as long as Dr. Phillips gives opinion testimony within the bounds of his expertise, there will be little to no undue prejudice to Defendants. His testimony is not the source of the language about John Doe being forced into a supine position and crying during the prayer rituals; Dr. Phillips' report makes clear that his description of what happened derives from the interview transcripts he was given, not any kind of independent medical observation Dr. Phillips made. *See* Doc. 467-1 at 4–5. No doubt, Dr. Phillips' testimony will include the same explanation. In that case, the prejudicial information about John Doe's position and emotional reaction does not

7

even derive from Dr. Phillips' testimony because Dr. Phillips is opining on the medical effects that would take place *if* the interview testimony is true. The hypotheticals within which Dr. Phillips is operating derive from other sources, not his own observations, and therefore his testimony is not the source of any prejudice that might occur.

Even if Dr. Phillips could fairly be considered the source of the emotional imagery in the language to which Defendants object, the probative value of the information about John Doe's possible stress and crying outweighs any prejudice. This information is not present in Dr. Phillips' report simply to tug at the heartstrings; it is medically relevant. John Doe's medical condition led to muscle weakness, so placement in a supine position and expending energy while crying would have, in Dr. Phillips' view, contributed to exhaustion and eventually difficulty breathing and swallowing. Doc. 467-1 at 8. These details, while certainly upsetting, are highly probative given the limitations of John Doe's physical strength. Accordingly, Dr. Phillips' report is not unduly prejudicial under Rule 403, and the Court will not exclude it.

## CONCLUSION

Defendants' Motion is GRANTED only insofar as Dr. Phillips may not testify to John Doe's actual cause of death due to his lack of qualifications in forensic pathology. However, Dr. Phillips' report is admissible, and he may testify about its contents and other matters pertinent to his expertise in pediatric neurology.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE