# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                         Case No. 1:18-cr-02945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS COUNTS ONE AND TWO AS UNCONSTITUTIONALLY VAGUE

THIS MATTER comes before the Court upon Defendants Subhanah Wahhaj, Jany Leveille, Siraj ibn Wahhaj, Hujrah Wahhaj, and Lucas Morton's Motion to Dismiss Counts One and Two as Unconstitutionally Vague ("Motion") (Doc. 506). Defendants argue that the statute under which they were charged, 18 U.S.C. § 2339A, is unconstitutionally vague because it fails to require intent or knowledge to assist *terrorism* despite the charge being titled "providing material support to terrorists." Doc. 506 at 1. The United States responds that notwithstanding the name, the elements themselves of the charge are clear and give adequate notice of the conduct that would constitute an offense. *See generally* Doc. 539. Having reviewed the parties' submissions and the applicable law, the Court finds that Defendants' Motion is not well-taken and therefore DENIES it.

## BACKGROUND

Defendants[1] are alleged to have kidnapped a three-year-old child, John Doe—the son of defendant Siraj ibn Wahhaj—from the child's mother and brought him to a remote compound in Amalia, New Mexico. Doc. 1 ¶ 17. It is alleged that Defendants, John Doe, and several other children lived at the compound for a period of months, during which Defendants performed repeated, demanding prayer rituals on John Doe. *Id.* ¶¶ 17, 19. According to a report from one of the other children present on the compound and a diary entry from one of the defendants, John Doe died during one of these prayer rituals. *Id.* ¶ 19. This alleged conduct led to kidnapping charges against Defendants Jany Leveille, Hujrah Wahhaj, Subhanah Wahhaj, and Lucas Morton. Doc. 85 at 8–9.

In addition to the kidnapping, Defendants are charged with having gathered firearms, transported them across state lines, stored them on their compound in Amalia, and trained with them. *Id.* at 2–5. Allegedly, they took these actions with the intent to engage in violent acts which included killing Federal Bureau of Investigation employees. *Id.* at 5. These allegations serve as the basis for the charges pursuant to 18 U.S.C. § 2339A and 2. *Id.* at 5–6.

## LEGAL STANDARD

A criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. El-Hajjaoui*, 227 F.3d 1274, 1277 (10th Cir. 2000) (citation omitted). If the statute's language fails to meet this standard, it is void for vagueness. *Id.* The void for vagueness doctrine is built on the concept of notice, so vagueness challenges fail when a reasonable person would clearly know that their conduct falls under the

---

[1] Defendant Siraj ibn Wahhaj is John Doe's father and therefore is not charged with kidnapping. *See* Doc. 85 ¶ 35.

statute's purview. *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). When vagueness challenges do not implicate the First Amendment, the court considers whether the statute is vague as applied to the facts of the present case. *Id.* (citations omitted).

**ANALYSIS**

Defendants make three arguments: that Section 2339A is unconstitutionally vague because it fails to require intent or knowledge of terrorism despite clear legislative intent to address terrorism, that Section 2339A invites arbitrary government overreach, and that the judicial reasoning in other case law supports an interpretation of Section 2339A as unconstitutionally vague. *See generally* Doc. 506. The Court addresses these arguments in the order Defendants have brought them.

I.   **No Requirement to Find Intent or Knowledge to Aid Terrorism**

Defendants argue that Section 2339A is, fundamentally, addressing terrorism. The offense is called Providing Material Support to Terrorists. Doc. 506 at 3. Its legislative history makes clear that the purpose of this statute was to target terrorist activity. *Id.* at 5. However, its language does not actually require defendants to know that their actions will further terrorist crimes; they must only know or intend that their material support will be used to carry out one or more of the crimes listed, not all of which are terrorist offenses. *Id.* at 8. This discrepancy between the actual mental state requirement and the legislative intent to address terrorist activity, according to Defendants, renders the statute void for vagueness.

The text of Section 2339A reads as follows:

> Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 32, 37, 81, 175, 229, 351, 831, 842(m) or (n), 844(f) or (i), 930(c), 956, 1091, 1114, 1116, 1203, 1361, 1362, 1363, 1366, 1751, 1992, 2155, 2156, 2280, 2281, 2332, 2332a, 2332b, 2332f, 2340A, or 2442 of this title, section 236 of the

3

> Atomic Energy Act of 1954 (42 U.S.C. 2284), section 46502 or 60123(b) of title 49, or any offense listed in section 2332b(g)(5)(B) (except for sections 2339A and 2339B) or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. A violation of this section may be prosecuted in any Federal judicial district in which the underlying offense was committed, or in any other Federal judicial district as provided by law.

18 U.S.C. § 2339A(a). The section goes on to outline the definitions of "material support or resources," "training," and "expert advise or assistance." *Id.* § 2339A(b). To put it briefly, the section punishes an individual's choice to aid and abet the listed offenses. These offenses include some offenses that intuitively constitute terrorism: for example, killing a U.S. national outside of the United States with the intent "to coerce, intimidate, or retaliate against a government or a civilian population," 18 U.S.C. § 2332. However, the enumerated offenses also include conduct such as killing a U.S. officer while that officer is engaged in official duties, even in the absence of terrorist intent. *See* 18 U.S.C. § 1114. Defendants use the following example: a U.S. officer cuts a person off in traffic while driving a government vehicle, and the person, enraged, kills the officer. *See* Doc. 506 at 4. This action that would fall under 18 U.S.C. § 1114, one of the enumerated offenses in Section 2339A, but it is not necessarily a "terrorist offense" under the meaning an ordinary person might give that phrase.

Defendants explain that the title, nearby sections, and legislative history of Section 2339A evinces a clear intent to address terrorism. Doc. 506 at 5–7. Yet, they argue, the "knowing or intending" standard does not require knowledge or intent to assist *terrorist* activity, but rather knowledge or intent to assist one of the offenses enumerated in the statute, which—as described above—may not necessarily be a terrorist offense in ordinary parlance. *Id.* at 8. Because the

predicate offense need not be a terrorist offense, but the statute is titled and legislatively intended to combat terrorism, Defendants argue that Section 2339A is unconstitutionally vague. *Id.* at 9.

The Court looks first to the text. If the text itself is not vague—that is, if the text puts a reasonable person on notice of what conduct constitutes a violation of the statute—then there is no need to consider the legislative history or congressional intent. *See United States v. Husted*, 545 F.3d 1240, 1245 (10th Cir. 2008) (when considering argument that statutory language might lead to an absurd result, court declined to consider legislative intent in statute's preamble because "there can be no greater statement of legislative intent than an unambiguous statute itself"); *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 137 S. Ct. 929, 942 (2017) ("The text is clear, so we need not consider this extra-textual evidence."). The Court will not look outside the text—to legislative intent or to the other sections[2] of the statute—to create an ambiguity if the text itself plainly states its requirements.

Defendants' approach to vagueness is somewhat unusual in this case. Vagueness cases often involve circumstances where the statutory language itself contains terms that are ill-defined or too subjective to provide adequate notice. *See, e.g., Johnson v. United States*, 576 U.S. 591, 596 (2015) (provision of Armed Career Criminal Act aimed at conduct "that presents a serious potential risk of physical injury to another" was vague); *Coates v. City of Cincinnati*, 402 U.S. 611, 613–14 (1971) (ordinance targeting conduct "annoying to persons passing by" was vague

---

[2] Defendants discuss the "whole act rule" inviting courts to consider each law within its larger statutory scheme. Doc. 506 at 4. A more recent case defines the whole act rule as follows: "[W]hen a certain term or phrase is used multiple times throughout a statute, the term should be interpreted in a consistent manner, because courts should assume that legislatures draft statutes in a way that is internally consistent in its use of language and in the way that its provisions work together." *Navajo Health Found.—Sage Mem'l Hosp., Inc. v. Burwell*, 263 F. Supp. 3d 1083, 1173 (D.N.M. 2016) (internal quotation omitted). There is no ambiguous or inconsistent terminology at issue in this case; rather, Defendants' concern is about a perceived disparity between the text of the statute and its title and legislative intent.

because "[c]onduct that annoys some people does not annoy others"). Here, however, Defendants do not identify an objectionable word or phrase within the text itself that is subject to multiple reasonable interpretations; rather, their vagueness claim rests on the statute's title and legislative purpose supposedly failing to perfectly align with its contents. The title of a statute does not limit the scope of its plain text. *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 139 (D.D.C. 2015) (citing *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29 (1947)). The legislative purpose, as described above, need not enter the analysis unless the text is unclear. Even so, a legislative purpose to combat terrorism does not necessarily require terrorist conduct to be an element of the offense—combating terrorism may also be achieved by targeting activities adjacent to terrorism, or activities commonly associated with terrorism, even if those activities are not themselves terrorism. Indeed, if Congress had wanted the law to target only actions undertaken for the purpose of terrorism, including such an element in the statute would be simple. The fact that Congress chose not to—and instead wrote a statute that very explicitly outlines what conduct falls within its scope, including some conduct that is not terrorism—indicates that Congress's intent was to take a slightly broader approach. That approach does not make the statute vague.

To underscore their arguments about legislative intent, Defendants also compare Section 2339A to Section 2339B, Doc. 506 at 11, and note that the United States Sentencing Guidelines ("USSG") treat violations of Section 2339A as terrorist offenses subject to a twelve-level increase and heightened supervise release requirements, *id.* at 15. Again, legislative intent and extratextual evidence need only come into play when the statute itself is unclear. Here, the statute makes clear that providing material support for a specific list of predicate offenses constitutes a violation; this language is unambiguous, and an examination into the nuances of legislative intent is unnecessary.

II. **Arbitrary and Overreaching Enforcement**

Defendants next argue that Section 2339A invites arbitrary and overreaching government enforcement. Doc. 506 at 16. Because the language includes offenses that do not constitute terrorism, Defendants argue that the language grants the government "complete discretion . . . to determine whether the suspect should be charged as a terrorist or ordinary criminal." *Id.* at 17. The United States counters that the language is sufficiently specific to guide police conduct; just because terrorism is not a required element does not make the actual elements of the violation unclear. Doc. 539 at 12.

A statute is unconstitutionally vague if it fails to "establish minimal guidelines to govern law enforcement" in arresting individuals for violations. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation omitted). In the absence of such guidelines, law enforcement may engage in a "standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* In short, unconstitutional vagueness occurs when law enforcement officers enjoy "unfettered discretion" for their arrests. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168 (1972). *Papachristou* rejected a vagrancy statute encompassing individuals who, among other things, wandered without a lawful purpose. *Id.* at 164. The police could use this incredibly ambiguous language to target individuals from unpopular groups even when the law would, on its face, also apply to more socially accepted groups such as members of golf clubs. *Id.* at 164, 170.

The language in Section 2339A does not invite such overreach. Rather than criminalizing ambiguous conduct that many law-abiding individuals often enjoy, such as wandering without a specific purpose, the statute criminalizes the provision of material support to a list of well-defined crimes such as "destroying aircraft, transacting in nuclear materials, murdering internationally protected persons, developing biological weapons, assassinating the President of the United States, and committing genocide." *Abu Khatallah*, 151 F. Supp. 3d at 141. True, other offenses such as

7

arson also appear on the list, but even arson is a well-defined crime rather than an act that law-abiding individuals often happen to engage in. *See id.* Section 2339A does not require knowledge or intent of terrorism specifically, but that does not mean the police can arrest virtually *anyone* doing virtually *anything* and call them terrorists—a fact in stark contrast to other vagueness cases like *Papachristou*. *See also Coates*, 402 U.S. at 614 (prohibiting as vague "enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed"). Rather, Section 2339A specifically indicates what conduct will lead to the increased punishments within its scope. While some political minds may disagree over whether all of that conduct is adjacent enough to terrorism to be included in a statute intended to punish the provision of aid to terrorists, Congress ultimately made the decision and articulated its standards clearly. It is up to law enforcement to abide by the terms of Congress's choice—terms which clearly indicate to police officers what types of material assistance to what crimes constitute Section 2339A violations.

      Finally, in their reply brief, Defendants argue that other aspects of the statute add to the risk of arbitrary enforcement, specifically the fact that the predicate offense need not be completed or attempted and that agreement is not necessary to form a conspiracy to which material support liability attaches. Doc. 560 at 3. Defendants did not identify these deficiencies in their opening brief and therefore waive them here. *See United States v. Pickel*, 863 F.3d 1240, 1259 (10th Cir. 2017) ("But [defendant] makes this argument for the first time in his reply brief, and it is therefore waived."). However, the Court will briefly note that Section 2339A's breadth does not make it vague. The statute covers the provision of aid to many offenses, including offenses that have not been completed. However, those offenses are clearly enumerated, and the provision of material support must be knowing or intentional. Section 2339A, while covering a wide range of conduct,

clearly identifies the behaviors it renders criminal, thereby limiting law enforcement's discretion and creating a relatively objective list of circumstances in which an arrest is warranted.

### III. Judicial Reasoning in Other Cases

Defendants compare the cases *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2001), *United States v. Amawi*, 545 F. Supp. 2d 681 (N.D. Ohio 2008), and *United States v. Abu Khatallah*, 151 F. Supp. 3d 116 (D.D.C. 2015) to the present case and urge the Court to either 1) rely on certain legal reasoning despite differences in the issues brought to the court (in the case of *Stewart*) or 2) distinguish them (in the cases of *Amawi* and *Abu Khatallah*).

*Stewart* involved challenges to Section 2339A claiming that the "knowing or intending" language was unconstitutionally vague, as was the term "personnel" as applied to the defendants in that case. 590 F.3d at 116. The Second Circuit rejected both arguments, and Defendants do not raise either of those arguments here. Doc. 506 at 20. Rather, Defendants point to certain language that the Second Circuit used in its reasoning: it referred to Section 2339A as forbidding material support to "certain enumerated forms of terrorism," 590 F.3d at 116, and it found that the defendants would satisfy the knowledge-or-intent provision if they "knew that their actions provided material support to a conspiracy to end the cease-fire and thereby unloose deadly acts of terrorism," *id.* at 117. Defendants argue that the Second Circuit's references to terrorism in these instances imply that knowledge or intent to support terrorism is part and parcel of Section 2339A's requirements. Doc. 506 at 21. Since the statute holds no such requirement, Defendants argue that it is unconstitutionally vague—vague enough, it seems, to confuse even the Second Circuit. *See id.* at 22.

The Court does not believe that the Second Circuit was confused. Rather, the Second Circuit was considering different issues, and it likely used the language "enumerated forms of

9

terrorism" because many of the enumerated crimes do pertain to terrorism, and the defendants in *Stewart* were specifically convicted of crimes relating to their contacts with a man in maximum security prison for terrorism-related crimes. 590 F.3d at 98. That is, the arguments before the Second Circuit did not appear to dispute whether terrorism had occurred, nor whether Section 2339A was vague for not requiring an intent to provide material support *to terrorists* specifically. Because the Second Circuit was not faced with these questions, its use of the shorthand "enumerated forms of terrorism" to refer to Section 2339A's list of predicate crimes did not implicate its legal conclusions. Indeed, the opinion was over 100 pages long, and would have been made even longer by using lengthier but more precise terms for the list of predicate crimes, such as "crimes that, in Congress's view, ought to be more stringently punished because they either constitute terrorism or are commonly associated with it." Regardless of the Second Circuit's exact reasoning in using that particular terminology, the Second Circuit did not face the question before the Court today, so the Court will not rely on the Second Circuit's turns of phrase to support reasoning that *Stewart* does not explicitly consider.[3]

      Defendants also distinguish *Amawi*, 545 F. Supp. 2d 681 (N.D. Ohio 2008). They argue that *Amawi* considered whether the terms "training," "expert advice or assistance," and "service" in Section 2339A were impermissibly vague, while Defendants in this case make no such argument, and therefore the case is distinguishable. Doc. 506 at 23. Defendants do not urge the Court to rely on this case, nor does the United States, and the Court finds that it deals with different

---

[3] Defendants make a similar argument with regard to *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), asserting that the Supreme Court characterized to Section 2339A as referring to "terrorist activities." Doc. 506 at 10. Again, *Holder* did not address the same question as here—it dealt with a vagueness challenge to different terms in the statute. *See* 561 U.S. at 20–25. This Court understands the Supreme Court's use of the phrase "terrorist activities" for the predicate offenses in Section 233A to be a shorthand rather than a legal ruling on the question presented here.

questions than the ones presented here and therefore offers little persuasive guidance to the matter at hand. Therefore, the Court will not consider it.

Finally, and most significantly, Defendants address their biggest obstacle: *Abu Khatallah*, which brings the argument that Section 2339A is unconstitutionally vague because it fails to provide notice of when one's conduct constitutes terrorism. 151 F. Supp. 3d at 138. This argument is nearly identical to Defendants' own, and *Abu Khatallah* rejects it squarely. In fact, *Abu Khatallah* brought such similar arguments, and the court addressed them so persuasively, that this Court has cited to it throughout this opinion.

Defendants argue that *Abu Khatallah* is distinguishable because it involved more serious offenses that directly implicated terrorist conduct. Doc. 506 at 24–25. *Abu Khatallah* dealt with an attack on a United States diplomatic compound in Benghazi, Libya, which led to the death of four Americans. 151 F. Supp. 3d at 120. This case operated on a far smaller scale. *See* Doc. 87 (superseding indictment). The Court finds that the factual differences Defendants identify do not affect the legal conclusions in *Abu Khatallah* and their applicability here. Certainly, the facts are not identical, but the legal reasoning tracks closely in addressing the argument presently before the Court.

Defendants also argue that *Abu Khatallah* was wrongly decided. They claim that *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019), counsels that "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor," and *Abu Khatallah* does not follow this standard. Doc. 506 at 25. The Court disagrees; *Abu Khatallah* did not find ambiguities in the statute, and therefore it had no need to resolve anything in the defendant's favor. *See* 151 F. Supp. 3d at 138–140. The Court agrees with the district court in *Abu Khatallah* that Section 2339A is

11

unambiguous, that its title does not limit the scope of its text, and that it does not require a connection to terrorism—nor is such a connection necessary to avoid vagueness problems.

Defendants briefly reiterate their earlier argument that failing to consider legislative intent is improper. Doc. 506 at 26. The Court has already addressed this: Congress's intent is best derived from the very clear language it took pains to use in Section 2339A, which includes offenses that are not necessarily terrorism.

Finally, Defendants go on to characterize *Abu Khatallah* as espousing the idea that because no other court had found Section 2339A vague based on its failure to define terrorism before, it must not be vague. Doc. 506 at 26. Defendants' argument utilizes the logic that "since no one has objected before, so it must be fine" and that this logic is un-American. *Id.* The Court does not read *Abu Khatallah* as relying on other courts' silence. Rather, *Abu Khatallah* explains that the history of Section 2339A as a law used against suspected terrorists does not translate into a requirement to prove terrorist intent or conduct; this interpretation makes sense, the court continues, in the context of the many other cases that have not felt the need to look into the lack of a definition for terrorism in the section. The *Abu Khatallah* court therefore does not take other courts' silence as endorsement, but instead brings it up simply to double check that the court's own interpretation fits logically within the larger context of other courts' behavior. This Court finds nothing un-American about considering, as one aspect of a broader analysis, how one's own reasoning aligns with what can be found in the greater legal community.

## CONCLUSION

For the reasons stated above, the Court finds that Section 2339A is not unconstitutionally vague. The best representation of congressional intent is the text of the law Congress chose to enact, the title of a section does not limit the scope of its text, and Section 2339A is quite clear in

delineating exactly what conduct serves as a violation, *even when* that conduct is not performed with "terrorist intent." Such a requirement is not present in the law and does not need to be. The law makes clear to individuals and law enforcement what conduct will violate the statute. Accordingly, the Court DENIES Defendants' Motion (Doc. 506).

    **IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE