**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

> **Plaintiff,**

> **v.**                                                             **No.: CR 18-2945-WJ**

**JANY LEVEILLE,**
**SIRAJ IBN WAHHAJ,**
**HUJRAH WAHHAJ,**
**SUBHANAH WAHHAJ, and**
**LUCAS MORTON,**

> **Defendant.**

## REPLY SUPPORTING THE DEFENDANTS' MOTION TO SUPPRESS INVOLUNTARY STATEMENTS

The United States concedes, as it must, that the transcripts and recordings of the children's interviews are inadmissible hearsay. Defendants agree that the statements are inadmissible hearsay but brought their motion to highlight the constitutional defects associated with using the statements in any way in this case—not just as substantive evidence in the case-in-chief. The United States' core response to the motion is to downplay the level of coercion present when federal law enforcement officers were questioning the children. Nevertheless, the United States cannot make the following inconvenience facts disappear: (i) Federal Agents, identifying themselves as such, subjected children to lengthy questioning without access to their parents, legal counsel, or any other person that might have been able to assist the children, assuage their fears, and help them understand the context of the questioning to which they were subject; (ii) the children had just

recently been forcibly separated from their parents and were facing the prospect of foster care and long term separation.  The children's statements under such circumstances are therefore inherently unreliable, involuntary, and subject to exclusion for any purpose at trial.

."

## ARGUMENT

### I.   NO PERSON FAMILIAR TO THE CHILDREN CONSENTED TO THE FBI INTERVIEWS.

The United States maintains, disingenuously, that "every interview was conducted with the consent of the children's legal guardians, whether the consenting guardians were CYFD itself or the foster parents." Doc. 574, at 3-4.  As the United States admits, however, the children were all removed from their parents through the use of government authority.  According to the United States, the Defendants are "misstat[ing]" the facts because, in the Government's view, "legal guardians" were present and consented to the interviews.

The Government's narrative is uncompelling.  The children were forcibly removed from their parents (and the Court should make no mistake: F.L.J. and J.L.J. are Ms. Leveille's children). Government actors effectuated that separation.  Government actors then took "legal custody" of those children over the protest of those children's parents.  Government actors then exercised their forced status as legal guardians to "consent" to interviews conducted for the purpose of gathering evidence against Defendants.  And to compound the disturbing nature of this sequence of events, these "legal" guardians did not advise the children that they had any rights or agency of their own.

Each of the Defendants has complained about the unconstitutional intrusions involved in this case.  One of the most egregious was the swift coordinated action by law enforcement, working with CYFD, to forcibly remove all of the children from the care of their parents and to place those children in CYFD (i.e., government) custody and foster care.  This background leading up to the FBI interviews undermines the notion that anything the children said or did was voluntary.  The consenting parties (CYFD and foster parents) were not known to or trusted by the Children. Rather, they were acting for and on behalf of the Government.  They were strangers in a position

of authority, just like the FBI agents.  The totality of the circumstances strongly suggest that the children spoke only involuntarily.  They were coerced.  Such involuntariness erodes any confidence that a fact-finder can have in the reliability of their statements.  *See Griffin v. Strong*, 983 F.2d 1540, 1543 (10th Cir.1993); *see United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009) ("[A] confession is only involuntary when the police use coercive activity to undermine the suspect's ability to exercise his free will.")).

The Government is quick to point out that the right against self-incrimination is a personal one, and that Defendants cannot assert such a right on behalf of the children.  Those children, however, were forced into a situation beyond their control and required to make statements that the Government believes incriminate one or more Defendants.  The use of such statements against Defendants violates the Due Process Clause of the Fifth Amendment. *See Clanton v. Cooper*, 129 F.3d 1147, 1157-58 (10th Cir. 1997), *overruled on other grounds, Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007). *See also Wilcox v. Ford*, 813 F.2d 1140, 1148 (11th Cir. 1987) ("admission at trial of improperly obtained statements…violates a defendant's Fifth Amendment right to a fair trial."); *United States v. Chiavola*, 744 F.2d 1271, 1273-74 (7th Cir. 1984); *United States v. Fredericks*, 586 F.2d 470, 480 (5th Cir. 1978); *LaFrance v. Bohlinger*, 499 F.2d 29, 34-35 (1st Cir. 1974); *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), *aff'g* 354 F. Supp. 1331 (E.D. Mich 1972). As stated by the Tenth Circuit in *Clanton*, when "evidence is unreliable and its use offends the Constitution, a person may challenge the government's use against him or her of a coerced confession given by another person." 129 F.3d at 1157-58; *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) ("Confessions wrung out of their makers may be less reliable than voluntary confessions, so that using one person's coerced confession at another's trial violates his rights under the due process clause.").

Defendants agree that the Court must evaluate the "totality of the circumstances" to determine whether a statement was coerced (i.e., whether the witnesses will was overborne"). *See United States v. Gonzales*, 164 F.3d 1285, 1289 n.1 (10th Cir. 1999)).  While the United States paints a picture of a happy harmonious set of circumstances under which the children engaged in friendly conversation, the truth more complex.  Even if the tone remained measured, the context informs the coerciveness of the interrogations.  The children were taken from their parents, put into government or foster custody, and then hauled into a room to be interrogated by FBI agents.  It is naïve to pretend the children's wills were not "overborne" under those circumstances.

## II.   THE CHILDREN WERE NOT ADVISED THAT THEY WERE NOT REQUIRED TO ANSWER QUESTIONS OR THAT THEY WERE ENTITLED TO HAVE LEGAL COUNSEL.

The United States also mentions that the interviewing agent "gently" nudged F.L.J. to be truthful and "accurately" advised the child that there could be negative consequences for not being truthful.  Something that was never made clear to the children, however, is that they were not required to speak to any agent or other government official at all.  The United States insists that the agents were very circumspect in how they handled the children they were interrogating.  In its Response Brief, the United States maintains that it would have been reckless for agents not to advise the children of the adverse consequences of lying to the agents.  On the other hand, the agents felt no obligation to suggest to the children that speaking with law enforcement officers is not mandatory.

The United States suggests that the agents' conduct was appropriate because the agents knew the children were lying about certain details.  The discussion of what parts of the children's statements may or may not be truthful is a red herring.  The interrogations are objectionable because they violated the children's and the Defendant's constitutional rights, and because they

are inherently unreliable.

## CONCLUSION

The Government rightfully agrees that it may not introduce the Children's statements in its case-in-chief because those statements are inadmissible hearsay.  Defendants submit, however, that there is no other permissible basis for the Government to introduce the Children's statements. The totality of the circumstances surrounding the children's seizure, separation from their parents, and lack of advice regarding rights, demonstrate that the children's statements were not voluntary and are therefore inadmissible against the Defendants for any purpose.


Respectfully submitted,

/s/ *Marshall J. Ray*
Marshall J. Ray
514 Marble Ave NW
Albuquerque, NM 87102
(505) 312-7598

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading was served as sealed to opposing counsel via

the CM/ECF system on this 24th day of January 2023.

/s/ *Marshall J. Ray*
Marshall J. Ray