IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 18-2945 WJ |
| | ) |
| JANY LEVEILLE, ET AL, | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' REPLY TO DEFENDANTS' RESPONSE TO MOTION TO EXCLUDE THE TESTIMONY OF DEFENSE EXPERT DR. DAVID COOK**

The Defendants' response confirms how the proposed testimony of Defense expert Dr. David Cook mischaracterizes and confuses the nature of the charges and is unnecessary, therefore risking the danger of unfair prejudice by confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Dr. Cook consequently should be excluded from testifying under Federal Rules of Evidence 401, 402, 403, and 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Government expects to show at trial that Jany Leveille claimed to be the Mahdi, the figure in Islamic eschatology who is believed to appear at the end of times to rid the world of evil and injustice. She also claimed to be Mary (Mariam), mother of Jesus of Nazareth (Isa), and that John Doe was her biological son, even though she did not give birth to him. She claimed that John Doe was Jesus of Nazareth. She claimed that her co-conspirators were other biblical figures, including Moses. She claimed that John Doe was possessed by evil spirits. After John Doe's death, she claimed that John Doe would be resurrected as Jesus Christ and would provide guidance to her and others in instituting a new order by attacking evil institutions, including the military, educational institutions and banks, and by killing soldiers and federal employees.

Dr. Cook is a professor of religion and specializes in Islam. According to the response to the Government's motion to exclude testimony, Dr. Cook's expertise is based on his "knowledge of established and well documented normative beliefs and practices as documented in studies in late antiquity, early Islam, contemporary Islam, and modern Muslim apocalyptic literature." Doc. 812 at 7-8. Dr. Cook's proposed testimony is expected to "include expert opinions and specialized knowledge about Islam and the areas in which Ms. Leveille's belief system, as articulated in her writings, diverged from traditional, mainstream, and popular Islam." *Id*. at 8. Importantly, Dr. Cook is not a psychologist or psychiatrist and admittedly is not qualified to testify as to any mental defect Leveille may have suffered under. Accordingly, Defendants concede that they are "not seeking to elicit from Dr. Cook testimony that because [Leveille's] beliefs were unique then she must have been mentally ill." *Id*. at 9. Dr. Cook also will not testify as to the source or reason for Leveille's assertions. *Id*. Instead, "Dr. Cook's proposed testimony will seek only to place Ms. Leveille's beliefs in the broader cultural context of Islam." *Id*.

Contrary to Defendants' repeated complaints, nothing in the superseding indictment or in the offenses with which Defendant has been charged make this a case about religion in general or Islam in particular. An understanding of Islam, whether in contemporary times or in late antiquity or in the context of modern Muslim apocalyptic literature, is not necessary and therefore is likely to mislead and confuse the jury as to facts which are necessary to understand for purposes of arriving at a verdict. It is sufficient for the jury to know that some of the Defendants' beliefs and practices were rooted in religious belief, e.g., exorcism (*ruqya*), but it does not take an expert to explain these beliefs and practices, and it is not necessary to know their "broader cultural context" within Islam. It will be obvious to a fact-finder of ordinary intelligence and experience that some of Defendants' beliefs and practices were Islamic; no expert is necessary to explain facts that are

clear on their face. Moreover, the Defendants' connection to Islam, or some variant of it, is incidental to the offense conduct, and the jury would not benefit from, and may be unfairly prejudiced by, an in-depth exegesis, as Dr. Cook proposes to provide, of the history and theological bases of the Defendants' asserted religious beliefs and practices. Finally, no expert is necessary to explain to a jury of ordinary intelligence and experience that some of Defendants' beliefs and practices "diverged from traditional, mainstream, and popular Islam." Whatever their cause, some of Defendants' beliefs and practices—that they were living prophets and saints, including Moses, Mary, and Jesus Christ, and mummified a dead child in the expectation he would rise from the dead to lead them in jihad—were clearly divergent, irrespective of religion.

     Simply put, the expert testimony Dr. Cook would offer is not necessary and is cumulative of facts that are clear on their face, namely, that Defendants' beliefs and practices were religious and divergent. Permitting Dr. Cook's unnecessary testimony therefore risks the danger of unfair prejudice by confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Dr. Cook's proposed testimony further prejudices the Government by bolstering Defendants' abiding complaint—that this case is all about religion and that the Government targeted them because they were Muslim. Ironically, it is now Defendants who want to talk about their religion, specifically, by means of detailed expert testimony about the roots of her beliefs in the Islam of late antiquity, early Islam, contemporary Islam, and modern Muslim apocalyptic literature, all for purposes of locating their beliefs in the broader cultural context of Islam. Once again, the Government reconfirms that this case is not about Defendants' religion, but about their actions. Allowing Dr. Cook's unnecessary testimony opens the door wide to confusing Defendants' actions with their religion and to misleading the jury as to the real issues in this case.

For the reasons stated herein and in the Government's Motion to Exclude Testimony of Dr. David Cook (Doc. 763), Dr. Cook's proposed testimony does not satisfy the gatekeeping requirement of Federal Rule of Evidence 702(a), which only permits opinion testimony where the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702(a). *See also Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991) ("[T]he touchstone of admissibility under Rule 702 is helpfulness to the trier of fact."). Dr. Cook's proposed testimony does not help the trier of fact to understand the evidence or to determine a fact in issue. Allowing Dr. Cook to testify would also expose the jury to irrelevant matters, be unfairly prejudicial to the government, and be highly misleading and confusing. For these reasons, Dr. Cook should be excluded from testifying at trial.

> Respectfully submitted,
>
> ALEXANDER M.M. UBALLEZ
> United States Attorney
>
> *Electronically filed*
> KIMBERLY A. BRAWLEY and
> TAVO HALL
> Assistant United States Attorneys
> P.O. Box 607
> Albuquerque, NM 87102
> (505) 346-7274

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to counsel for the Defendants. A
copy was also mailed to Defendants Siraj Ibn
Wahhaj and Lucas Morton.

  *Filed Electronically*
KIMBERLY A. BRAWLEY
Assistant United States Attorney