**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                            No. 18-CR-2945-WJ

JANY LEVEILLE,
SIRAJ IBN WAHHAJ,
HUJRAH WAHHAJ,
SUBHANAH WAHHAJ, and
LUCAS MORTON,

Defendants.

## MEMORANDUM OPINION AND ORDER ON THE ADMISSIBILITY OF THE COCONSPIRATOR STATEMENTS THE UNITED STATES INTENDS TO INTRODUCE AT TRIAL PURSUANT TO FED. R. EVID. 801(d)(2)(E)

**THIS MATTER** is before the Court resulting from the _James_ hearing held on July 19, 2023, on the admissibility of the coconspirator statements the United States intends to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E). In addition to testimony from a Government witness, the Court considered the following filings:

- The United States' Notice of Intent to Introduce Out-of-Court Statements, filed October 15, 2019 (Doc. 156)

- The United States' Notice of Lodged Appendix, filed October 15, 2019 (Doc. 157)

- Defendants' Amended Motion for Production of Alleged Coconspirator Statements and for a Pre-Trial Hearing on Their Admissibility, filed February 3, 2023 (Doc. 606)

- Defendant Siraj ibn Wahhaj's Joinder to Defendants' Amended Motion for Production of Alleged Coconspirator Statements and for a Pre-Trial Hearing on Their Admissibility, filed

February 24, 2023 (Doc. 647)

- The United States' Response to Defendants' Amended Motion for Production of Alleged Coconspirator Statements and for a Pre-Trial Hearing on Their Admissibility, filed February 27, 2023 (Doc. 650)

- Defendant Subhanah Wahhaj's Reply to the United States' Response to Defendants' Amended Motion for Production of Alleged Coconspirator Statements and for a Pre-Trial Hearing on Their Admissibility, filed March 13, 2023 (Doc. 678)

- The United States' Supplemental Notice of Intent to Introduce Out-of-Court Statements, filed June 2, 2023 (Doc. 781)

- The United States' Notice of Lodged Appendix, filed June 2, 2023 (Doc. 782)

- The United States' Second Supplemental Notice of Intent to Introduce Out-of-Court Statements, filed June 23, 2023 (Doc. 816)

- The United States' Notice of Lodged Appendix, filed June 23, 2023 (Doc. 817)

- Defendant Subhanah Wahhaj's Response in Opposition to the United States' Supplemental Briefing, filed June 25, 2023 (Doc. 819)

- Defendant Lucas Morton's Joinder to Defendant Subhanah Wahhaj's Response in Opposition to the United States' Supplemental Briefing, filed July 6, 2023 (Doc. 833)

- Defendant Hujrah Wahhaj's Objections to the United States' Supplemental Briefing, filed July 7, 2023 (Doc. 836)

- The United States' Third Supplemental Notice of Intent to Introduce Out-of-Court Statements, filed July 16, 2023 (Doc. 850)

- The United States' Closing Statements Regarding Admissibility of Coconspirator Statements, filed August 14, 2023 (Doc. 929)

- Defendants' Closing Arguments in Support of Exclusion of Certain Proffered *James* Statements, filed August 14, 2023 (Doc. 931).

The parties dispute admissibility under Rule 801(d)(2)(E) regarding various coconspirator statements. During the *James* hearing, the Court heard testimony from Special Agent Travis Taylor, received thirty-five exhibits, and heard arguments from counsel. Having considered the parties' pleadings, the parties' arguments, and the evidence and testimony presented, the Court concludes: (1) the United States has established by a preponderance of the evidence that a conspiracy existed; (2) Defendants and Von Yusuf Leveille were members of the conspiracies; and (3) the statements the United States intends to introduce at trial were made in the course of and in furtherance of the conspiracy. Accordingly, the Court finds that: (1) statements offered for purposes other than their truth are not hearsay and are admissible under Fed. R. Evid. 801; (2) statements made by a party opponent are admissible under Fed. R. Evid. 801(d)(2)(A); and (3) statements made in furtherance of the conspiracies by any named Defendant, as well as those by Von Yusuf Leveille, are admissible as coconspirator statements under Rule 801(d)(2)(E).

## BACKGROUND

Defendants[1] are charged with four conspiracies in the Superseding Indictment (**Doc. 85**): Conspiracy to Provide Material Support to Terrorists, Conspiracy to Murder an Officer or Employee of the United States, Conspiracy to Commit an Offense Against the United States, and Conspiracy to Commit Kidnapping in violation of 18 U.S.C. §§ 2339A, 1117, 371, and 1201(c), respectively. Because the allegations in this case are lengthy, the Court has produced a summary of the counts from the indictment below:

---

[1] Defendants Hujrah Wahhaj and Subhanah Wahhaj are not charged in Count 3 and Defendant Siraj ibn Wahhaj is not charged in Count 6.

| COUNT/ CHARGE | JANY LEVEILLE | SIRAJ IBN WAHHAJ | HUJRAH WAHHAJ | SUBHANAH WAHHAJ | LUCAS MORTON |
|---|---|---|---|---|---|
| 1.  Conspiracy to provide material support—18 U.S.C. § 2339A | **YES** | **YES** | **YES** | **YES** | **YES** |
| 2.  Providing material support—18 U.S.C. §§ 2339A & 2 | **YES** | **YES** | **YES** | **YES** | **YES** |
| 3.  Conspiracy to murder an officer or employee of the United States— 18 U.S.C. § 1117 | **YES** | **YES** | **NO** | **NO** | **YES** |
| 4.  Conspiracy to commit an offense against the United States—18 U.S.C. § 371 | **YES** | **YES** | **YES** | **YES** | **YES** |
| 5.  Possessing a firearm while unlawfully in the United States/aiding and abetting 18 U.S.C. §§ 922(g)(5) & 2 | **YES** | **YES** | **YES** | **YES** | **YES** |
| 6.  Conspiracy to commit kidnapping 18 U.S.C. § 1201(c) | **YES** | **NO** | **YES** | **YES** | **YES** |
| 7.  Kidnapping 18 U.S.C. §§ 1201(a)&2 | **YES** | **NO** | **YES** | **YES** | **YES** |

The Government avers, and this Court finds that Hujrah Wahhaj and Subhanah Wahhaj are unindicted coconspirators as to the conspiracy in Count 3, Siraj ibn Wahhaj is an unindicted coconspirator as to the conspiracy in Count 6, and Von Yusuf Leveille is an unindicted coconspirator as to the conspiracy in Count 1.

The Government seeks a preliminary ruling on the admissibility of numerous statements. **Docs. 156, 15, 781, 782, 816, 817, 850, 929**. The United States contends the vast majority of these statements are non-hearsay because they are not being offered for their truth; however, the

Government also seeks particularized rulings on admissibility with regard to specific statements under both Fed. R. Evid. 801(d)(2)(A), (E).

Defendants object to the introduction of the proffered statements against them at trial. **Docs. 606, 647, 678, 819, 833, 836, 931**. The pleadings analyzed herein address the merits of the Defendants' hearsay objections, the resulting Confrontation Clause issues (if any), and the numerous statements' admissibility under the particular Federal Rule of Evidence.

## APPLICABLE LAW

Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Riego*, No. 21-596, 2022 U.S. Dist. LEXIS 165986, at *2–3 (D.N.M. Sept. 13, 2022) (quoting *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997)). A district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." *United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir. 1991). The Tenth Circuit advises that "Rule 403 is an extraordinary remedy and should be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988). Relevant evidence may, of course, also be excluded if it meets the definition of "hearsay" and does not fall within a recognized exception. *See* Fed. R. Evid. 802.

Rule 801 defines a "statement" as "a person's oral assertion, written assertion, or nonverbal

conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Hearsay is a statement made by a declarant outside of "the current trial or hearing" that is offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)–(2). If a declarant's words are not intended as an assertion; they are not a statement. Similarly, if a declarant's statement is not offered for its truth; it is not hearsay.

The two primary means for admitting statements here revolve around Rule 801(d)(2)— specifically, statements by a party opponent or those by coconspirators. Fed. R. Evid. 801(d)(2)(A), (E). Statements of a party opponent are excluded from the definition of hearsay under Rule 801. *See e.g.*, *United States v. Brinson*, 772 F.3d 1314, 1317 (10th Cir. 2014) ("Facebook messages do not constitute hearsay because they consist of statements of a party opponent."); *United States v. Quintana*, 70 F.3d 1167, 1170 (10th Cir. 1995) ("All the tapes admitted by the district judge consisted of conversations to which [defendant] was a party. Thus, the conversations were admissions by a party-opponent and not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(A)."); *United States v. Busch*, 758 F.2d 1394, 1397 (10th Cir. 1985) (explaining a defendant who tape recorded himself making statements cannot complain about their use under Rule 801(d)(2)(A)). Similarly, statements by one coconspirator are not hearsay and "can be attributed to all." *Bourjaily v. United States*, 483 U.S. 171, 188 (1987).

Prior to admitting a statement under Rule 801(d)(2)(E), the United States must prove three elements by a preponderance of the evidence: (1) a conspiracy existed; (2) the defendants and the declarant were members of the conspiracy; and (3) the statements were made during and in furtherance of the conspiracy. *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *see also* Fed. R. Evid. 801(d)(2)(E).

6

## DISCUSSION

### I. Specific findings of non-hearsay under Rule 801(c)

When a prosecutor introduces statements "simply to prove that the statements were made," that is not hearsay. *Anderson v. United States*, 417 U.S. 211, 220 (1974). Statements that are not admitted for their truth, but instead "assert nothing," are "demonstrably false," or establish the existence of a "relationship" are similarly not hearsay. *See United States v. Cesareo-Ayala*, 576 F.3d 1120, 1129 (10th Cir. 2009). "[T]estimony *not* offered to prove the matter asserted that is 'offered instead for relevant context or background' is not hearsay." *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (unpublished opinion) (emphasis added) (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009)). Likewise, questions and comments do not constitute hearsay if they are not offered to prove the truth of the matter but are offered to show their effect on the other person in the conversation and provide context. *See United States v. Smalls*, 605 F.3d 765, 785 n. 18 (10th Cir. 2010).

With all of this in mind, the Tenth Circuit strongly cautions trial courts from allowing the unfettered use of "non-hearsay" statements as the Government's attempt to evade the limitations of the Rule Against Hearsay. *See generally Hinson*, 585 F.3d 1328; *United States v. Cass*, 127 F.3d 1218 (10th Cir. 1997); *United States v. Freeman*, 816 F.2d 558 (10th Cir. 1987); *cf.* Fed. R. Evid. 802. When a statement disguised as "background" actually "bear[s] on the ultimate issue," then the Court must consider the prejudice that would result if the jury considered the statements for their truth. *United States v. Alqahtani*, No. 20-82, 2021 U.S. Dist. LEXIS 50268, at *9–10 (D.N.M. Mar. 16, 2021). As such, just because the Government is able to identify a "relevant non-hearsay use for out-of-court statements" does not mean they are admissible *ipso facto*. *Id.* at 11. Underlying this rationale is the fact the Confrontation Clause bars "testimonial" hearsay statements

unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 n.7 (2004) ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008) (same).

The Government's organization of the out-of-court statements into three discrete categories of admissibility quells any *Cass* or *Hinson* concerns. Despite the sheer number of statements noticed, the non-hearsay evidence is not "extensive and prejudicial" when compared to the scope of the other categories of statements. *Cass*, 127 F.3d at 1222–23. Additionally, *Freeman*, *Cass*, and *Hinson* all dealt with law enforcement overstepping the bounds of providing "background" information. There is no such issue here. The proffered testimony is neither from law enforcement nor being offered for the truth of the matter. The Rule 403 balancing favors admission because the probative value of the statements is not substantially outweighed by the danger of unfair prejudice. *See Seeley v. Chase*, 443 F.3d 1290, 1295 (10th Cir. 2006) (discussing considerations for the Rule 403 balancing test).

Even if an out-of-court statement is offered for the truth, it does not constitute hearsay if it is a statement by a party opponent. Fed. R. Evid. 801(d)(2)(A). Here, the Defendants' own statements require no particular vetting for constitutional purposes since they are not hearsay under Rule 801(d)(2). *See Busch*, 758 F.2d at 1397. As such, the statements below that are either not offered for their truth or are those of a party-opponent are not hearsay and do not implicate the Confrontation Clause.

**A. The fact a statement was made, false statements, and the effect on listener are legitimate bases for admitting statements as non-hearsay**

The first "type" of statements the Government offers are purported merely to show they were made—without regard for the truth of their content. Testimony is not hearsay when it is

offered to prove only that it was made and not the underlying truth. *See Creaghe v. Iowa Home Mut. Cas. Co.*, 323 F.2d 981, 984 (10th Cir. 1963) (citing *Aikins v. United States*, 282 F.2d 53, 57 (10th Cir. 1960)).

Some examples from this "type" of proffered testimony include written statements by Jany Leveille in her book that: (1) Hujrah Wahhaj and Siraj Wahhaj went to London to learn how to perform exorcisms; (2) that Jany Leveille instructed Siraj Wahhaj to take JOHN DOE from his caregiving mother; and (3) that Jany Leveille and Siraj Wahhaj decided to keep and conceal JOHN DOE from his mother. **Doc. 929 at 16; Doc. 157 at Ex. 4; Doc. 878 (*James* Hearing Transcript) at 23:11–20**. If the Government offers Jany Leveille's book simply to show she wrote the statements contained within its pages—that does not run afoul of the prohibition against hearsay. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay."); *see also Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555–56 (10th Cir. 1995); *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 172 (10th Cir. 1968) ("It is well settled that testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement."). Ultimately the Court agrees with the United States that the existence of the book, as well as the fact certain statements were made therein, is not hearsay.

Much the same, the many statements by the Defendants "denying knowledge" of JOHN DOE's whereabouts[2] are not hearsay because they are not offered for their truth. **Doc. 929 at 16; Doc. 878 at 43:16–46:8, 47:1–48:14, 49:10–15, 51:12–25, 71:7–22; Doc. 782 at Ex. 19, 29(a), 29(b); Doc. 817 at Ex. 33, 34**. In fact, these statements were offered as a false cover-up indicating

---

[2] This ruling includes statements by the Defendants to one another as well as any statements to the children at the compound to not talk about JOHN DOE or say where he was (**Doc. 878 at 49:16-21; 50:2-51:2; Doc. 782, Ex. 27(c)**) as well as any statements by the Defendants to outsiders—such as family and friends—denying they had taken JOHN DOE. **Doc. 878 at 22:11–20, 30:5–10, 71:12–19; Doc. 782, Exs. 19, 22**.

consciousness of guilt. *See United States v. Figueroa-Cruz*, 500 F. App'x 759, 763 (10th Cir. 2012) (unpublished opinion) (explaining statements that are a false cover story or consciousness of guilt are not hearsay); *United States v. Lewis*, 594 F.3d 1270, 1284 (10th Cir. 2010) (statements offered that are false are not hearsay). Because the Government is offering these statements to show they were *false*, they are necessarily not being offered for the truth of the matter and are not hearsay. *See United States v. Gonzalez-Perez*, No. 12-1085, 2013 U.S. Dist. LEXIS 203158, at *11 (D.N.M. Jan. 30, 2013) (admitting statements to show they are false does not constitute hearsay).

When a statement is offered to show the listener was on notice of a fact; is also not hearsay. *See Thornburg v. Mullin*, 422 F.3d 1113, 1128 (10th Cir. 2004); *see also Smalls*, 605 F.3d at 785 n.18 ("[S]tatements offered for their effect on the listener are not hearsay."). The Defendants' denying knowledge of JOHN DOE's whereabouts are also admissible to show their effect on the listener. The listeners vary from those on social media to their children. When spoken online, denying the whereabouts of JOHN DOE had a tangible effect on the listener-reader. When spoken to the children, denying the whereabouts of JOHN DOE informed their action. Either way, these statements are not hearsay. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993); *see also United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (statements may be admitted showing why the listeners acted as they did). In this context, the Court finds that the Defendants' statements are not hearsay.

The writings in Jany Leveille's book are potentially admissible in numerous ways. *See infra* ¶ III (chart) (analyzing statements under Rule 801(d)(2)(E)). Her writings may also be admissible against her—and potentially Subhanah and Hujrah Wahhaj—as a statement of a party opponent under Rule 801(d)(2)(A), (B). *See infra* ¶ III n.11 (explaining adoptive admissions). Additionally, the Court notes that if the Government proves these journal entries were made to

"describe[e] or explain[] an event" while Jany Leveille was perceiving (or just perceived) it—then these statements might also be admissible as substantive evidence as a present sense impression. Fed. R. Evid. 803(1).

In this first category, each of the noticed statements are admissible because they are offered either to show the fact the statement was made, the statement is false, or its effect on the listener. Because these "types" of statements are offered for a legitimate reason other than the truth of the matter asserted, the Court finds they are admissible non-hearsay. Defendants may, of course, request that the Court give the jury a limiting instruction that it can use these statements for the limited purposes described above and not for their truth.

**B. Statements about beliefs or when the truth is "already clear" are also not hearsay**

The next "type" of statements offered by the Government are not assertions or, alternatively, are assertions "not offered as evidence of the truth . . . because the truth [is] irrelevant or already clear." *United States v. Alcorta*, 853 F.3d 1123, 1141 (10th Cir. 2017) (citation omitted). Sometimes the purpose of admitting what a defendant said is simply to provide context for the jury. *Cesareo-Ayala*, 576 F.3d at 1129 (offering statements for context when their truth is immaterial does not violate the Rule Against Hearsay). Admitting statements for context becomes tricky, of course, if the information goes toward "precisely the issue the government [is] required to prove" and "the government clearly relie[s] on the . . . statements as truthful." *Hinson*, 585 F.3d at 1337 (quoting *United States v. Becker*, 230 F.3d 1224, 1228 (10th Cir. 2000)). For the reasons explained below, all but one of the statements in this "type" are admissible.

Here, the Government seeks a ruling on the admissibility of Defendants' statements regarding: (1) the fact JOHN DOE died in the Defendants' custody, (2) their belief in Jany Leveille's ability to receive messages from God, and (3) their belief in JOHN DOE's resurrection.

**Doc. 878 (*James* Hearing Transcript) at 22:21–23:7, 71:9–73:13, 75:22–76:2, 165:9–19; Doc. 157, Ex. 4 at 39; Doc. 157, Ex. 10; Doc. 782, Ex. 19; Doc. 929 at 17–18**. The Government asserts such statements will not be offered for their truth—because the truth is irrelevant and already clear. *Alcorta*, 853 F.3d at 1141. While acknowledging these statements might implicitly assert that the Defendants committed the underlying acts, they do not "depend on the [declarant's] truthfulness, memory, or perception—the core credibility concerns that lie behind the hearsay rule." *Cesareo-Ayala*, 576 F.3d at 1130 (quoting *Rodriguez-Lopez*, 565 F.3d at 315). Statements of this type may be properly admitted for "non-hearsay contextual value." *United States v. Woods*, No. 17-1235, 2021 U.S. Dist. LEXIS 81858, at \*24 (D.N.M. Apr. 29, 2021); *see Cesareo-Ayala*, 576 F.3d at 1129 (explaining that statements are not hearsay under Rule 801(c) when they are not admitted for their truth, but instead to establish a relationship and put the defendant's statements in context). Specifically, the statements regarding Jany Leveille's ability to receive messages from God, the inevitable resurrection of JOHN DOE, and cleansing of society are admissible for the non-hearsay purpose of contextualizing the Defendants' beliefs (irrespective of their truth or impracticability).

The Court is weary of admitting statements about JOHN DOE dying in the Defendants' custody as "context"—since it goes toward "precisely the issue the government [is] required to prove" in Counts 6 and 7. *Becker*, 230 F.3d at 1228. For this reason, the Court declines to admit statements about JOHN DOE dying in the Defendants' custody on this ground.

The Government also aims to admit statements by the Defendants about their beliefs via this second category of non-hearsay. Put simply: whether or not the Defendants' beliefs are true is irrelevant; what is relevant, however, is what the declarants think. *Alcorta*, 853 F.3d at 1141 n.6. As such, statements made by Hujrah Wahhaj to her daughter's school that she would not be

12

returning to because of a family emergency is admissible because it goes to her beliefs (or, alternatively, because it was false). **Tr. at 27:1–4; Doc. 782, Ex. 21**; *see supra* ¶ I.A (explaining false statements are not hearsay). The writings in Jany Leveille's book detailing Hujrah's immediate willingness to join the Defendants are likewise admissible as non-hearsay as to the Defendants' beliefs. **Tr. at 27:1–4, 72:18–20; Doc. 782, Exs. 19 and 21; Doc. 929 at 18**. Necessarily then, any and all Defendants' statements as to their beliefs in Jany Leveille's abilities (to receive messages from God, resurrect JOHN DOE, or otherwise) are admissible as non-hearsay. *See Alcorta*, 853 F.3d at 1141 n.6.

A separate basis for admission is also possible if the trial testimony establishes exactly "what" the Defendants "adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B); *see United States v. Harrison*, 296 F.3d 994, 1001 (10th Cir. 2002) (according to Rule 801(d)(2)(B), a statement is not hearsay if the Defendant "manifested an adoption or belief in its truth"). In particular, any Defendant's statement about believing in Jany Leveille's abilities (*viz.* to receive messages from God, resurrect JOHN DOE, and cleanse society) are admissible as non-hearsay. So too are Subhanah Wahhaj's stated beliefs in the group's purpose to reveal "the truth" as well as Lucas Morton's belief in the need to "face the nation and their issues." **Doc. 157, Ex. 10; Doc. 782, Ex. 19**.

Because each of the noticed statements[3] are offered either for a legitimate reason other than the truth of the matter asserted or as statements by a party-opponent, they are admissible.

Again, the Defendants may request that the Court provide a limiting instruction to the jury that they may use these statements for the limited purposes described above and not for their truth.

## C. Questions, requests, and demands are non-assertive and therefore not hearsay

---

[3] Excluding any statements about JOHN DOE dying in the Defendants' custody as a "belief," while ruling it is still admissible under Rule 801(d)(2)(A).

The third "type" of non-hearsay offered by the Government deals particularly with numerous non-assertive statements. *See United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990) (questions and inquiries are not hearsay because they do not assert anything); *United States v. Twitty*, 689 F. App'x 890, 894–95 (10th Cir. 2017) (citing *Smalls*, 605 F.3d at 785 n.18) (explaining orders are not hearsay because they are not offered for their truth). Demands, requests, orders, and questions generally are not hearsay (because hearsay must be a statement and because something that is neither true nor false cannot be offered to prove the truth of the matter). *See Alcorta*, 853 F.3d at 1141; *Cesareo-Ayala*, 576 F.3d at 1128–29; *cf.* Fed. R. Evid. 801(a).

With respect to these non-assertive statements, the Government seeks to admit the following: (1) Subhanah Wahhaj's question "Why hasn't the FBI found us yet?"; (2) Jany Leveille's question "How could a Quranic recitation execute a child?"; and (3) Von Yusuf Leveille's question if the kids "spilled" something. **Doc. 157, Exs. 4 and 10; Doc. 929 at 18–19; Tr. at 62:17–63:9, 146:7–15**. Another such example is the letter[4] from Jany Leveille to Muhammad Wahhaj wherein she requested that Muhammad take all of his money out of the bank, bring his guns, and join the Defendants in New Mexico. **Doc. 157, Ex. 6**. Because neither Lucas Morton's act of delivering the letter nor the request to Muhammad are assertions, they are not hearsay. Ultimately, these statements lack the "assertive quality" required under Rule 801(a)(1). *United States v. Summers*, 414 F.3d 1287, 1299 (10th Cir. 2005); *see United States v. Jackson*, 88 F.3d 845, 847–48 (10th Cir. 1996) (the question, "Is this Kenny?" cannot reasonably be construed to be an intended assertion, either express or implied). As such, these questions are admissible as non-hearsay.

---

[4] Jany Leveille's letter is also a statement of a party-opponent and therefore admissible under Rule 801(d)(2)(A). This same party-opponent carve-out provides an additional basis for admitting the questions asked by Subhanah Wahhaj and Jany Leveille.

The Court notes that the Defendants may request a limiting instruction on the jury's use of these statements.

## II. Coconspirator statements under Rule 801(d)(2)(E)

Before deciding whether a statement between coconspirators qualifies as non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(E), the Court must first determine by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy. *See Owens*, 70 F.3d at 1123–24 (first citing *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994); then quoting *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir.1990)). Moreover, in order to clear the first hurdle of showing a conspiracy existed, the Government must prove: (1) there was an agreement to violate the law; (2) the declarant knew the essential objectives of the conspiracy; (3) the declarant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent. *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013) (citing *United States v. Ailsworth*, 138 F.3d 843, 850–51 (10th Cir. 1998)).

## A. Several conspiracies existed between Jany Leveille, Siraj ibn Wahhaj, Subhanah Wahhaj, Hujrah Wahhaj, Lucas Morton, and Von Yusuf Leveille

The Government asserts that the four conspiracies charged in the Superseding Indictment (**Doc. 85**) were comprised of the five Defendants as well as Jany Leveille's brother, Von Yusuf Leveille, with respect to Count 1. **Doc. 929 at 20**. In proving the existence of a conspiracy, the Government must provide "some independent evidence" linking the Defendants to the conspiracies. *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987) (explaining the "independent evidence" requirement merely means "evidence other than the proffered statement"). Such evidence, however, may be inferred "from the defendants' conduct and other circumstantial

evidence indicating coordination and concert of action." *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quoting *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005)); *see also United States v. Hamilton*, 587 F.3d 1199, 1206 (10th Cir. 2009) ("[B]ecause a criminal conspiracy by its very nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence.").

At the *James* hearing, the Court heard testimony from FBI Special Agent Travis Taylor and received 35 exhibits from the United States—all of which is proper for the Court to consider when determining if the Government has carried its evidentiary burden. *Owens*, 70 F.3d at 1124 (explaining a district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial"); *cf.* Fed. R. Evid. 104(a). In *Owens*, the district court conducted a *James* hearing wherein only one Government witness, an FBI Special Agent, testified. The Tenth Circuit determined that this procedure was appropriate for proving the existence of a conspiracy—and the Court, likewise, finds that approach appropriate in the instant case. *Owens*, 70 F.3d at 1123–24 (holding a district court "may consider and rely on the actual coconspirator statements the government seeks to admit to determine whether a predicate conspiracy existed" within the meaning of Rule 801(d)(2)(E)).

For the reasons detailed below, there is sufficient independent evidence for the Court to conclude several conspiracies existed between the Defendants (and Von Yusuf Leveille with respect to Count 1). The individuals entered into several agreements with knowledge of their essential purposes and voluntarily took part in facilitating the endeavors of the group writ large. In sum: a conspiracy existed.

**1. An agreement existed**

In proving the existence of an agreement, the Government merely has to show the coconspirators "tacitly came to a mutual understanding." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 474 (10th Cir. 1990) (explaining there is no requirement to prove an express or formal agreement was made).

The overarching agreement in this case revolves around the Defendants' plan to take JOHN DOE, separate themselves from the outside world, and train as an armed group to prepare for a societal cleansing. **Doc. 929 at 22**. This plan began at least as early as Hujrah and Siraj ibn Wahhaj's trip to the United Kingdom wherein they learned how to perform ruqyah[5]. **Tr. at 17:15– 19:14**. This independent evidence demonstrates prior planning as well as "coordination and concert of action" between Hujrah Wahhaj and Siraj ibn Wahhaj. *Dazey*, 403 F.3d at 1159. Initially, JOHN DOE was taken from Georgia to Alabama by Jany Leveille, Siraj ibn Wahhaj, and Hujrah Wahhaj. Once all five Defendants joined together in Alabama, it becomes clear that the conspiracy to take JOHN DOE across state lines all the way to New Mexico was underway. This conclusion is supported by Siraj ibn Wahhaj telling JOHN DOE's mother he would not be returning the child—an ends that Subhanah Wahhaj, Hujrah Wahhaj, Lucas Morton, and Jany Leveille[6] perpetuated by denying his return. **Tr. at 43:16–46:8, 47:1–48:14, 49:10–15, 51:12–25, and 71:7–22**. The myriad of statements by the Defendants to one another (as well as to the children) not to talk about JOHN DOE further lends credence to the existence of the kidnapping conspiracy. **Tr. at 49:16–21; 50:2–51:2; Doc. 782, Ex. 27(c)**.

---

[5] Testimony from the *James* hearing indicates "ruqyah" or "ruqya" is an Islamic cleansing ritual practice intended to remove black magic, "jinns," or "shaytans" from an individual (similar to a Catholic exorcism). **Doc. 878 (*James* Transcript) at 17:10–18:5**.
[6] Von Yusuf Leveille's updates to Jany Leveille warning her about law enforcement's search for JOHN DOE also inculpate him in this larger, overarching conspiracy.

Next, to prove the existence of the conspiracies to provide material support, commit an offense against the United States, and murder federal officers, the Government offered evidence regarding the transportation of firearms and ammunition as well as the construction of the compound. **Tr. at 13:11–25, 16:24–164:4; Doc 157, Ex. 4 at 52**. The Government also highlighted Siraj ibn Wahhaj's concern over this cargo during the automobile crash in Alabama as well as the Defendants' "camping" narrative (with a dearth of camping gear). **Tr. at 36:3–38:16; Doc. 782, Ex. 17**. Evidence regarding Jany Leveille and Lucas Morton's efforts to recruit others to join the "righteous" cause and die as martyrs also demonstrates the existence of a conspiratorial agreement. **Tr. at 57:1–58:15, 64:6–24; Doc. 782, Ex. 17**. Finally, the Government elicited testimony from SA Travis Taylor regarding the group's firearms training as well as their delineation and acceptance of specific "roles" to further demonstrates the existence of these conspiracies. **Tr. at 56:10–59:9, 69:1–70:8; Doc 782, Ex. 18**. Case law has established that testimony of a Government witness regarding his interactions, conversations, or knowledge of a conspiracy is adequate independent evidence. *Owens*, 70 F.3d at 1125.

The Defendants' attempts to explain away this evidence as "narrative declarations and idle chatter" (**Doc. 931**, *passim*) is not well taken. *United States v. Doerr*, 886 F.2d 944, 951–52 (7th Cir. 1989); *United States v. Roberts*, 14 F.3d 502, 514–15 (10th Cir. 1993). Viewed in totality, the Government sufficiently proved the existence of an agreement. Specifically, the United States presented evidence that: (1) Defendants discussed taking, holding, hiding, or keeping JOHN DOE numerous times; (2) each Defendant adhered to Jany Leveille's testament book; (3) Defendants built a fortified structure (compound) and protected it with firearms; (4) Defendants had specific roles; (5) several Defendants attempted to recruit another person to provide more money and weapons; and (6) Defendants ultimately planned to become martyrs.

18

The Court finds the United States established, by a preponderance of the evidence, the existence of an agreement between Jany Leveille, Siraj ibn Wahhaj, Hujrah Wahhaj, Subhanah Wahhaj, Lucas Morton, and Von Yusuf Leveille.

**a. Von Yusuf Leveille was part of the conspiracy's agreement as to Count 1**

During the timeframe charged in the Superseding Indictment (**Doc. 85**), Von Yusuf Leveille was part of the mutual understanding to provide material support to terrorists. The Government proved that he provided material and financial support to the group—in the form of a propane grill. **Doc. 782, Ex. 25 at 7; Tr. at 60:8–10**. Likewise, Von Yusuf Leveille's frequent usage of the plural pronouns "we" and "us" are evidence of his identification as part of the group. **Doc. 157, Exs. 7 and 10; Doc 782, Ex. 25 at 26**. His agreed-upon "role" in the group was to translate Jany Leveille's book into Haitian Creole for distribution. **Tr. at 62:4–13; Doc. 157, Ex. 10 at 232**. As such, the Court finds Von Yusuf Leveille was part of the group's conspiracy. *See infra* ¶ II.B.1.

**b. Siraj ibn Wahhaj was part of the conspiracy's agreement as to Count 6**

Although not charged in Count 6 of the Superseding Indictment (**Doc. 85**), Siraj ibn Wahhaj was part of the conspiracy to kidnap JOHN DOE. The parental exception in Section 1201(a) is an affirmative defense—meaning Siraj ibn Wahhaj cannot be held criminally liable for kidnapping his child. *See United States v. Torres*, No. 19-3333, 2023 U.S. Dist. LEXIS 49068 at *11–12 (D.N.M. Mar. 22, 2023). But availing oneself of an affirmative defense does not negate participation in the underlying conduct. *See United States v. Corrigan*, 548 F.2d 879, 883 (10th Cir. 1977) ("An affirmative defense admits the defendant committed the acts charged . . . ."); *see also United States v. Engstrum*, No. 08-430, 2009 U.S. Dist. LEXIS 53120, at *8 (D. Utah June 15, 2009) (citing *Patterson v. New York*, 432 U.S. 197, 207 (1977) (explaining an affirmative

defense "does not serve to negative" the underlying crime)). In fact, a person "may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas v. United States*, 522 U.S. 52, 64 (1997). The Tenth Circuit has held that "[t]he co-conspirator hearsay exception contains no requirement that the declarant be a defendant," but instead only requires that the declarant be "a member of the conspiracy." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1081 n.5 (10th Cir. 2006). Accordingly, the fact that Siraj ibn Wahhaj is not charged with the conspiracy to commit kidnapping does not prohibit admission of his statements under Rule 801(d)(2)(E). *See United States v. Dickey*, 736 F.2d 571, 598 (10th Cir. 1984) (allowing testimony of an unindicted coconspirator under Rule 801(d)(2)(E)); *see also United States v. Buchanan*, 787 F.2d 477, 482 (10th Cir. 1986) (explaining the coconspirator exception under Rule 801 does not turn on the existence of a "federal conspiracy").

The Government provided evidence that Siraj ibn Wahhaj travelled to the United Kingdom to learn how to perform "ruqyah" exorcisms and took JOHN DOE away from his mother (Hakima Ramzi). **Tr. at 17:15–19:14, 23:11–20**. The fact Siraj ibn Wahhaj transported JOHN DOE to New Mexico after learning that law enforcement was looking for him further demonstrates his participation in the agreement to conceal JOHN DOE. **Tr. at 43:8–46:17, 47:18–48:6, 60:20–61:24**. Ultimately, the evidence shows the existence of an agreement and "mutual understanding" between the charged Defendants and Siraj ibn Wahhaj with respect to Count 6.

Because the Government proved a conspiracy to kidnap JOHN DOE existed, any statements Siraj ibn Wahhaj made "in furtherance of" that conspiracy are within purview of Rule 801(d)(2)(E). *See infra* ¶ II.B.2.

**2. The declarant knew the essential objectives of the conspiracies**

The Government "only needs to demonstrate the defendant shared a common purpose or

design with his alleged co-conspirators" to prove knowledge of the essential objectives. *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006); *see also United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (explaining the prosecution does not have to show the defendants knew all the details or all of the members of the conspiracy).

Here, the Government provided sufficient evidence for the Court to conclude each of the Defendants had a shared knowledge of essential objectives—namely: a plan to take JOHN DOE, rebuff JOHN DOE's mother's (and law enforcement's) efforts to recover him, transport JOHN DOE across state lines, and hold him indefinitely. **Doc 157, Ex. 5 at 52–54; Doc. 782, Ex. 24 at 7**. Although Jany Leveille, Siraj ibn Wahhaj, and Hujrah Wahhaj were involved in the conspiracy from its inception; both Subhanah Wahhaj and Lucas Morton joined the plan to take JOHN DOE across state lines and conceal him from law enforcement and his mother. **Tr. at 22:11–23:7**. The fact Hujrah Wahhaj disenrolled her daughter from school is also circumstantial evidence that supports the indefinite nature of JOHN DOE's kidnapping. **Tr. at 27:1–4; Doc. 782, Ex. 21**. Agent Taylor's testimony that both Hujrah and Subhanah Wahhaj helped Jany Leveille edit her testament book further demonstrates their shared knowledge in the conspiracies. **Tr. at 59:10–16**. Upon receipt and review of the evidence, the Court finds all the Defendants were aware of the kidnapping conspiracy's essential objectives.

Regarding the conspiracies in Counts 1 and 4, Special Agent Taylor testified that the Defendants' each accepted roles on the compound to further the plan's objectives—ranging from tactics and firearms training to cooking and cleaning. **Tr. at 56:16–59:6, 69:1–70:8; Doc. 782, Exs. 2(b) and 25(a)**. The Government also relies on the recruitment letter written by Jany Leveille and delivered by Lucas Morton to Siraj Wahhaj's brother. **Tr. at 64:20–67:24; Doc. 157, Ex. 6**. This letter asks Muhammad to provide money and guns before joining the Defendants in New

21

Mexico. **Doc. 157, Ex. 6**. Taken together, there is sufficient evidence to establish the Defendants were aware of the conspiracies' essential objectives.

Regarding the conspiracy to murder an officer of the United States, the Court also finds the Government carried its burden. Specifically, Special Agent Taylor testified regarding the children's knowledge about the plan to prepare for war, build an army for jihad, and shoot law enforcement. **Tr. at 76:21–78:5**. This serves as circumstantial evidence as to the adult Defendants' knowledge. Lucas Morton and Siraj ibn Wahhaj's firearms training further goes to their knowledge of this conspiracy's objectives. Perhaps most telling is the "Phases of a Terrorist Attack" document coupled with the construct of the Defendants' compound (which included bullet-proof walls, firing platforms, and tunnels with pre-staged weapons). **Doc. 782, Ex. 20; Tr. at 78:6–79:4**. All of this evidence sufficiently demonstrates the Defendants' knowledge of the plan's essential objective to kill federal agents in an armed conflict.

### 3. Knowing and voluntary participation

To prove participation, the Government is required to show the Defendants had "knowledge of the conspiracy and voluntarily participated therein." *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992). In proving such participation, a conspirator "need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy." *Id.* (quoting *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 451 (10th Cir. 1984)). In fact, joining a conspiracy "after its inception does not make [one's] co-conspirators previous statements inadmissible." *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991); *see also United States v. Cook*, No. 07-766, 2008 U.S. Dist. LEXIS 142761, at *4-5 (D.N.M. Sept. 11, 2008) (quoting *United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987) ("[A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's

responsibility for the existing freight—or conduct—regardless of whether he is aware of just what it is composed.")).

Special Agent Taylor's testimony, the documentary evidence, and the actual coconspirator statements demonstrate the Defendants knowingly and voluntarily participated in the conspiracies. *Owens*, 70 F.3d at 1123–24; *Bourjaily*, 483 U.S. at 181. Relying on the same evidence, the Government demonstrated all the Defendants, irrespective of their date of entry into the conspiracy, were coconspirators based on their awareness of both the scope and objectives of the endeavor. *Evans*, 970 F.2d at 669–70.

For the kidnapping conspiracy in particular, the Court finds the following evidence compelling with respect to participation: (1) Hujrah Wahhaj and Siraj ibn Wahhaj travelling to London in order to learn ruqyah rituals; (2) Jany Leveille and Siraj ibn Wahhaj working together to take JOHN DOE from his mother; (3)  Subhanah Wahhaj and Lucas Morton joining the group's cross-country transportation of JOHN DOE; (4) Lucas Morton's obfuscating comments to law enforcement; and (5) the Defendants' collective buy-in regarding their roles at the compound. **Doc. 157, Ex. 4; Doc. 782, Exs. 19–24, Ex. 29(a), 29(b); Doc. 817, Exs. 33–34**. Finally, upon JOHN DOE's death, none of the Defendants sought medical assistance—demonstrating their collective participation in furthering their belief that JOHN DOE would be resurrected. **Tr. at 40:14–41:5; Doc. 929 at 31**.

Next, regarding the Defendants' participation in the conspiracy to provide material support and commit an offense against the United States, the Government highlights: the gathering of firearms and ammunition, construction of the compound, and solicitation of Siraj ibn Wahhaj's brother. **Doc. 157, Ex. 6; Tr. at 64:20–67:24; Doc. 929 at 31**. Again, the evidence shows each Defendant had a defined role in this conspiracy—which they accepted. **Doc. 782, Ex. 25 at 22–**

23

**23, 93; Doc. 929 at 31**.

Finally, Lucas Morton and Siraj ibn Wahhaj's firearms training shows their participation in the conspiracy to murder federal officers while Jany Leveille's statements that the purpose of the firearms was to prepare for a war with federal officers are proof positive of her participation. **Tr. at 74:7–76:25; Doc. 782, Ex. 31 at 11; Doc. 929 at 31**.

Of note, the acts undertaken by the Defendants following the Alabama car crash were truly a commensurate team effort—as each Defendant facilitated moving the firearms and ammunition before expeditiously leaving the state. **Doc. 157, Ex. 4 at 21, 39; Doc. 782, Ex. 24; Tr. at 37:21–39:17; Doc. 929 at 30–31**. Their acts, coupled with their misrepresentations to law enforcement, further shed light on the Defendants' knowledge of the conspiracies' true purposes.

In sum, for each of the charged conspiracies, the Defendants had knowledge of the enterprise and chose to voluntarily participate therein. *See United States v. Cushing*, 10 F.4th 1055, 1065–66 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 813 (2022).

**4. Interdependence among the coconspirators**

Interdependence among the coconspirators is the last hurdle in the four-part test for proving the existence of a conspiracy. *Rutland*, 705 F.3d at 1249. Interdependence "may be shown when a defendant's activities 'facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole.'" *United States v. Pickel*, 863 F.3d 1240, 1252–53 (10th Cir. 2017) (quoting *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011)).

Relying on the same evidence, the Government proved each Defendant facilitated the endeavors of both the other coconspirators[7] and the venture writ large—that is to say, the

---

[7] The overarching enterprise stems from the same facts—that is, the overarching plan involved taking JOHN DOE, isolating themselves from the outside world, and training for an armed conflict all in preparation for a cleansing of society after JOHN DOE's resurrection. Doc. 929 at 22. Because Defendants Hujrah Wahhaj and Subhanah Wahhaj

Defendants had "a unified and shared objective." *United States v. Carnagie*, 533 F.3d 1231, 1238

(10th Cir. 2008) (describing "wagon-wheel" conspiracies). Each Defendant took steps to facilitate:

(1) kidnapping JOHN DOE; (2) supplying and training with firearms; (3) constructing and

outfitting the compound; and (4) the resurrection of JOHN DOE. Perhaps most telling of the

Defendants' interdependence were their regimented "roles." **Tr. at 56:16–59:6, 69:1–70:8; Doc.**

**782, Exs. 2(b) and 25**. Each Defendant acted in the pursuit of common goals, knew their roles in

the plan, and relied on one another for the success of the conspiracy.

**B. The declarants and Defendants were members of the conspiracies**

Having determined a conspiracy exists, the Court must now determine if alleged

coconspirators were members of the conspiracy. For purposes of Rule 801(d)(2)(E), an individual

need not be formally charged as a conspiracy member to be considered a conspiracy member.

*United States v. Durland*, 575 F.2d 1306, 1310 (10th Cir. 1978). In making this determination, the

Court must find that the declarant was a coconspirator with the particular defendant(s) against

whom the statement is being offered. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th

Cir. 1995) ("[I]n deciding whether statements are admissible under Rule 801(d)(2)(E), the

appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and

not on whether the statements were 'made to' a member of the conspiracy.").

In the instant case, the Defendants are all named as "favored" and "righteous" individuals

by Jany Leveille in her letter or her testament book (the book which proscribes rules, roles, and

purpose). **Doc. 157, Exs. 4 and 6**. Both Hujrah and Subhanah Wahhaj are alleged to have helped

Jany Leveille edit this book—further demonstrating their membership. **Tr. at 59:10–16**. But most

insightful on the membership aspect is the Defendants' interdependence and their regimented

---

are not charged in Count 3 and Defendant Siraj Ibn Wahhaj is not charged in Count 6, the Court has analyzed each
Defendant's involvement in the conspiracy Counts separately so as to avoid any potential variance claim.

"roles." **Tr. at 56:16–59:6, 69:1–70:8; Doc. 782, Ex. 2(b) at 28–29 and Ex. 25**.

During the *James* hearing as well as in its pleadings, the United States avers that Siraj ibn Wahhaj is an unindicted coconspirator in Count 6 and Von Yusuf Leveille is an unindicted coconspirator in Count 1.[8] *See infra* ¶¶ II.B.1–2. The Government has provided sufficient evidence for the Court to conclude that all the Defendants (as well as Von Yusuf Leveille) were members of the multiple conspiracies—either as charged or as unindicted coconspirators. The documents, messages, and facts above establish their membership by a preponderance of the evidence. Here, given that each Defendant is either charged or an unindicted coconspirator in each of the four conspiracies, whenever a Defendant was the declarant then they were quite obviously also a coconspirator and member of the conspiracy. *See Owens*, 70 F.3d at 1123–24.

## 1. Von Yusuf Leveille is "member" of the conspiracy as an unindicted coconspirator in Count 1

As mentioned above, Von Yusuf Leveille was part of the conspiracy to provide material support to terrorists. His frequent usage of the plural pronouns "we" and "us" evince of his identification as part of the group. **Doc. 157, Exs. 7 and 10; Doc. 782, Ex. 25 at 26**. Additionally, he is named as a "favored" individual in the testament book (the book which proscribes rules, roles, and purpose). **Doc. 157, Exs. 4 at 1 and 6**. Not only did he consider himself part of the Defendants' group—he actually provided material and financial support to the Defendants. **Doc. 782, Ex. 25 at 7.** Further, Von Yusuf Leveille had an agreed-upon "role" of translating Jany Leveille's book into Haitian Creole for distribution. **Tr. at 62:4–13; Doc. 157, Ex. 10 at 232**.

In order to aid the conspiracy, Von Yusuf Leveille provided updates to the charged Defendants about ongoing law enforcement search for them. **Doc. 782, Ex. 25; Tr. at 60:8–10**

---

[8] Despite both Subhanah Wahhaj and Hujrah Wahhaj being unindicted coconspirators in Count 3, the Government proffered that it does not intent to use any statements under Rule 801(d)(2)(E) to prove Count 3 against the other Defendants. Doc. 929 at 41 n.8.

**and 61:12–24**. *See Alcorta*, 853 F.3d at 1141 (explaining statements that "relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy") (quoting *Williamson*, 53 F.3d at 1520). As such, the Court finds Von Yusuf Leveille was a member of the group's conspiracy—making any statements from him to the charged Defendants "in furtherance of" the conspiracy admissible under Rule 801(d)(2)(E).

**2. Siraj ibn Wahhaj is "member" of the conspiracy an unindicted coconspirator in Count 6**

Without rehashing the entirety of *supra* ¶ II.A.1.b, it bears repeating that the "co-conspirator hearsay exception contains no requirement that the declarant be a defendant," but instead only requiring the be "a member of the conspiracy." *Ken-Mac Metals, Inc.*, 458 F.3d at 1073 n.5. Accordingly, the fact that Siraj ibn Wahhaj is not charged with the conspiracy to commit kidnapping does not prohibit admission of his statements under Rule 801(d)(2)(E). *See Dickey*, 736 F.2d at 598 (allowing testimony of an unindicted coconspirator under Rule 801(d)(2)(E)); *see also Buchanan*, 787 F.2d at 482 (explaining the coconspirator exception under Rule 801 does not turn on the existence of a "federal conspiracy").

The Government provided evidence of Siraj ibn Wahhaj's membership in the kidnapping conspiracy by showing he travelled to the United Kingdom to learn how to perform "ruqyah" exorcisms, physically took JOHN DOE away from his mother, transported JOHN DOE to New Mexico, and then concealed JOHN DOE after learning that family, friends, and law enforcement were looking for him. **Tr. at 17:15–19:14, 23:11–20, 43:8–46:17, 47:18–48:6, 60:20–61:24**. This evidence shows the existence of an agreement and "mutual understanding" between the charged Defendants and Siraj ibn Wahhaj with respect to Count 6.

Because the Government proved Siraj ibn Wahhaj's membership in the conspiracy to kidnap JOHN DOE; any statements he made "in furtherance of" that conspiracy fall within

purview of Rule 801(d)(2)(E).

**C. Statements were made in the course of and in furtherance of the conspiracies**

A statement by one conspirator made in furtherance of the conspiracy is admissible against all coconspirators. *United States v. Stein*, 985 F.3d 1254, 1268–69 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 425 (2021). Of course, there is no "talismanic formula" for divining whether a particular statement was intended to further the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578–79 (10th Cir. 1993) (en banc) (citing *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)). That being said, examples of statements the Tenth Circuit has held to be in furtherance of a conspiracy include statements explaining events of importance to the conspiracy, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, statements identifying a fellow coconspirator, and discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members. *United States v. Mariscal-Lopez*, No. 21-524, 2023 U.S. Dist. LEXIS 11653, at *5 (D.N.M. Jan. 24, 2023) (citing *Rutland*, 705 F.3d at 1252) (internal quotations and citations omitted); *see Williamson*, 53 F.3d at 1520–21 (holding that statements which relate to (1) the identity and roles of coconspirators; (2) avoiding detection by law enforcement officers; (3) allaying the fears and suspicions of individuals; and (4) inducing future involvement in the conspiracy may all be "in furtherance of" a conspiracy).

Despite Defendants Subhanah and Hujrah Wahhaj's objections to particular statements by their coconspirators because they were "not aware of," "did not hear," or "did not agree with" those statements—that does not matter. **Doc. 836 at 5–7; Doc. 819 at 4–7**. Because Subhanah and Hujrah Wahhaj were members of the conspiracies, any and all statements by coconspirators that

were made "in furtherance of" the conspiracies are admissible against all the Defendants (irrespective of whether they were made before or after Subhanah and Hujrah joined the conspiracy). *Stein*, 985 F.3d at 1269; *Brown*, 943 F.2d at 1255.

Nevertheless, "statements are not in furtherance of the conspiracy if they are mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Alcorta*, 853 F.3d at 1137; *see also United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988). While certainly not dispositive under Rule 801(d)(2)(E), a declarant's use of present and future tense verbs demonstrates an ability for future action—*i.e.*, action that can be done in furtherance of a conspiracy. In contrast, when a declarant exclusively uses past tense verbs, it bolsters a finding of "mere narrative" or "idle chatter." To this point, the proper focus on the "in furtherance of" prong requires the Court to look at the "declarant's intent"—not on the statement's actual effect in advancing the conspiracy. *Perez*, 989 F.2d at 1578 (quoting *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991)).

Of course, statements made upon the conclusion or termination of a conspiracy cannot be in furtherance of a conspiracy. *See Dutton v. Evans*, 400 U.S. 74, 81 (1970) (explaining Rule 801(d)(2)(E) "applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealments of the criminal enterprise"). This begs the question: when did the Defendants' conspiracies end?

In a typical drug dealing conspiracy, the seizure of the suppliers, dealers, or products could terminate the conspiracy. The Supreme Court held that after the "central criminal purposes" of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied. *Krulewitch*

*v. United States*, 336 U.S. 440, 443 (1949). Thus, statements made to conceal the crime after the main conspiracy has ended fall beyond the purview of the coconspirator exception. *See Grunewald v. United States*, 353 U.S. 391, 405 (1957); *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) (explaining concealment after the main conspiracy has ended falls beyond the purview of the coconspirator exception).

This case, however, is distinguishable from a conspiracy involving discreet transactions. These conspiracies were not able to be terminated until JOHN DOE's body was recovered on August 6, 2018—given the fact the central criminal objective of cleansing non-believers revolved around his resurrection (and the concealment of his body). *See United States v. Qayyum*, 451 F.3d 1214 (10th Cir. 2006) (evaluating the "scope" of a conspiracy by the indictment). As such, any statements made until August 6, 2018, are likely admissible under Rule 801(d)(2)(E) if they were in furtherance of the conspiracies.

## III. Statement-by-statement review of coconspirator statements

It is both proper and appropriate for this Court to make rulings by category and subject— rather than analyze every single line of the statements provided in the United States' notices. *Stein*, 985 F.3d at 1268–69 (affirming a district court's decision to admit coconspirator statements in their entirety instead of "sentence-by-sentence"). For the coconspirator statements the Government intends to offer for the truth of the matter asserted, Rule 801(d)(2)(E) must be construed strictly. *Perez*, 989 F.2d at 1578. In this vein, the Court makes particular conclusions on the admissibility of the *James* proffers in the following table:

| *James* Proffer (and category)[9] | Ruling[10] |
|---|---|
| **Statements made by coconspirator(s) to children, family, and friends** | |
| 1. Siraj ibn Wahhaj accused Hakima and Jamella of practicing "black magic" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance to the conspiracy, discusses future intent, and induces future involvement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarant: Siraj ibn Wahhaj | |
| Source: Jamella Jihad | |
| **Doc. 157, Ex. 1** | |
| Objection: Subhanah Wahhaj objects because it is unknown if Subhanah had joined the conspiracy at this time, the date that statement was made is unknown, and because it's not in furtherance of the conspiracy | |
| | The Court overrules the Defendants' combined objections. |
| 2. Jany Leveille became pregnant with JOHN DOE, Hakima became pregnant by performing "black magic," and that resulted in Jany's baby being transferred into Hakima's womb | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance to the conspiracy and provides reassurance. *Rutland*, 705 F.3d at 1252. |
| Declarant: Jany Leveille | |
| Source: John Doe 3 | |
| **Doc. 157, Ex. 2** | |
| Objection: Subhanah Wahhaj objects due to a lack of evidence Subhanah heard or knew about the statements or joined the conspiracy to kidnap JOHN DOE. Subhanah Wahhaj also objects based on the Confrontation Clause. | The Confrontation Clause of the Sixth Amendment does not bar the admission of this statement if John Doe 3 testifies at trial. |
| | The Court overrules the Defendants' combined objections. |
| 3. Siraj ibn Wahhaj said JOHN DOE was possessed by the devil | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance to the conspiracy. *Rutland*, 705 F.3d at 1252. |
| Declarant: Siraj ibn Wahhaj | |
| Source: Hakima Ramzi | |
| **Doc. 156 at 15** | |
| Objection: Subhanah Wahhaj objects due to a lack of evidence Subhanah heard or knew about the statements or joined the conspiracy to kidnap JOHN DOE. Subhanah Wahhaj also objects based on the Confrontation Clause. | The fact Siraj ibn Wahhaj is the declarant does not make this statement inadmissible. *See Dickey*, 736 F.2d at 598; *Buchanan*, 787 |

---

[9] The specific statements are from Docs. 156, 157, 781, 782, 816, 817, 850, and 929; whereas the consolidated objections are from Docs. 819, 833, 836, and 931.

[10] Each statement is also admissible against the specific declarant-defendant as non-hearsay under Rule 801(d)(2)(A) as an opposing party's statement.

| | |
|---|---|
| | F.2d at 482.<br><br>The Court overrules the Defendants' combined objections. |
| 4. Jany Leveille received messages and directions from God and these messages took the form of orders and directives. Jany recorded these messages in journals, a thumb drive, and her computer | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance to the conspiracy, creates cohesion, and maintains the flow of information. *Rutland*, 705 F.3d at 1252.<br><br>The Court overrules the Defendants' combined objections. |
| Declarant: Jany Leveille | |
| Source: John Doe 3<br>**Doc. 157, Ex. 2** | |
| Objection: Subhanah Wahhaj objects due to a lack of knowledge about Jany's claims. | |
| 5. Jany Leveille directed Siraj ibn Wahhaj to take JOHN DOE and bring him to her. When Hakima would call and ask for JOHN DOE's return, Jany would say "no." | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement set the transaction of the conspiracy in motion, induces future involvement, and explains an event of importance to the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarant: Jany Leveille | |
| Source: John Doe 3<br>**Doc. 157, Ex. 2** | |
| Date: November–December 2017 | |
| Objection: Subhanah Wahhaj objects due to her lack of participation in the conspiracy. | |
| 6. Jany Leveille took JOHN DOE from Georgia to Alabama and New Mexico to perform an exorcism on him and cast away the demons | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement set the transaction of the conspiracy in motion, induce future involvement, and explains an event of importance to the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarant: Jany Leveille | |
| Source: John Doe 3<br>**Doc. 157, Ex. 2** | |
| Objection: Subhanah Wahhaj objects due to a lack of knowledge about Jany's claims and a lack of participation in the kidnapping or exorcism | |
| 7. Jany Leveille received messages from God and these messages directed the activities on the compound | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule |
| Declarant: Jany Leveille | |

| | |
|---|---|
| Source: John Doe 2 and John Doe 3<br>**Doc. 157, Exs. 1 and 2** | 801(d)(2)(E). Specifically, this statement set the transaction of the conspiracy in motion, maintains the flow of information, and explains events of importance to the conspiracy. *Rutland*, 705 F.3d at 1252. |
| Objection: Subhanah Wahhaj objects because there is no evidence the statement was made in the course and scope of any conspiracy that Subhanah was part of | The Court overrules the Defendants' combined objections. |
| 8. Jany Leveille told the group that they could not talk to anyone about JOHN DOE being at the compound because they would "all go to jail" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintains trust, avoids detection by law enforcement, and informs the current status of the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarant: Jany Leveille | |
| Source: John Doe 2<br>**Doc. 157, Ex. 1** | |
| Objection: Subhanah Wahhaj objects because it is unclear who else said not to tell anyone about JOHN DOE | The Court overrules the Defendants' combined objections. |
| 9. Jany Leveille said that JOHN DOE would come back to life as "Isa," and make miracles. If people didn't believe the miracles, they would have to be killed | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintains trust, provides reassurance, explains an important event in the conspiracy, and discusses future intent for another conspiracy. *Rutland*, 705 F.3d at 1252. |
| Declarant: Jany Leveille | |
| Source: John Doe 2 and John Doe 3<br>**Doc. 157, Exs. 1 and 2** | |
| Objection: Subhanah Wahhaj objects because she was not aware of Jany's miracle or the need to kill the non-believers. Even if true, Subhanah was not part of that conspiracy. | The Court overrules the Defendants' combined objections. |
| 10. Jany Leveille said "Isa" (JOHN DOE) would give messages about the corrupt institutions. Siraj ibn Wahhaj said the group would "shoot" the corrupt institutions (FBI, military, schools, etc.) as an army of jihad | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintains explains an important event in the conspiracy, discusses future intent about the conspiracy, and induces future involvement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Jany Leveille and Siraj ibn Wahhaj | |
| Source: John Doe 2<br>**Doc. 157, Ex. 1** | |
| Objection: Subhanah Wahhaj objects because she was not aware of these statements nor was she a part of this conspiracy. | The Court overrules the Defendants' combined objections. |
| 11. Jany Leveille and Siraj ibn Wahhaj said | Having found all the named Defendants were |

| | |
|---|---|
| the non-believers would have to be killed<br>Declarants: Jany Leveille and Siraj ibn Wahhaj<br>Source: John Doe 3<br>**Doc. 157, Ex. 2**<br>Objection: Subhanah Wahhaj objects because she was not aware of these statements nor was she a part of this conspiracy. | parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, maintains the flow of information, and discusses future intent. *Rutland*, 705 F.3d at 1252.<br><br>The Court overrules the Defendants' combined objections. |
| 12. Siraj ibn Wahhaj and Lucas Morton were practicing shooting because they were going to war. Siraj ibn Wahhaj "really wanted" to go to war. Jany Leveille told them to practice shooting so that God would help them in war<br>Declarants: Siraj ibn Wahhaj, Lucas Morton, and Jany Leveille<br>Source: Jane Doe 1<br>**Doc. 157, Ex. 3**<br>Objection: Subhanah Wahhaj objects because she was not aware of these statements. | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, discusses future intent, induces future involvement, and informs the current status of the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| 13. Hujrah Wahhaj told her daughter's teacher that she was taking her out of school and would not be returning due to a family emergency<br>Declarants: Hujrah Wahhaj<br>Source: Teacher<br>**Doc. 782, Ex. 21**<br>Date: December 5, 2017<br>Objection: Hujrah Wahhaj objects on relevance. | This statement is admissible non-hearsay under Rule 801(d)(2)(A) as an opposing party's statement.<br><br>This statement is inadmissible under Rule 801(d)(2)(E). While certainly relevant as to Hujrah Wahhaj's intent to join the group's conspiracies, there is insufficient evidence demonstrating this statement was made in furtherance of any charged conspiracy.<br><br>The Court overrules the Defendant's relevance objection. |
| 14. Siraj ibn Wahhaj told Hakima Ramzi that he would take JOHN DOE to the park and bring him right back. He later told Hakima Ramzi that he would not be returning JOHN DOE<br>Declarants: Siraj ibn Wahhaj<br>Source: Hakima Ramzi<br>**Doc. 782, Ex. 24**<br>Date: November 30, 2017<br>Objection: Siraj ibn Wahhaj cannot be an | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, discusses future intent, induces future involvement, and informs the current status of the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |

| | |
|---|---|
| unindicted coconspirator, the statements were not in furtherance of the kidnapping conspiracy, and the statements were not made to a coconspirator. | The fact Siraj ibn Wahhaj is the declarant does not make this statement in furtherance of the kidnapping conspiracy inadmissible. *See Williamson*, 53 F.3d at 1519 ("[I]n deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were '*made by*' a member of the conspiracy, and not on whether the statements were '*made to*' a member of the conspiracy.") (emphasis added).<br><br>The Court overrules the Defendants' combined objections. |
| 15. Siraj ibn Wahhaj told stories about "SWAT stuff," that "two" was a code word for if there was danger, that it is better to shoot someone at night, that Siraj did not like law enforcement, and the "had to kill people" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintains trust, discusses future intent, and informs the current status of the conspiracy. *Rutland*, 705 F.3d at 1252.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Siraj ibn Wahhaj | |
| Source: John Doe 2 | |
| **Doc. 782, Ex. 1(a)–1(d)** | |
| Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | |
| 16. Siraj ibn Wahhaj told the group to "load up" their firearms | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement informed the current status of the conspiracy, explained action about an event of importance, and induced future involvement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Siraj ibn Wahhaj | |
| Source: John Doe 2 | |
| **Doc. 782, Ex. 1(d)** | |
| Date: August 3, 2018 | |
| Objection: Confrontation Clause, relevance, and idle chatter" | |
| 17. Jany Leveille told everyone that those who did not believe in their message would "have to be killed" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explained action about an event of importance, informed the group about the |
| Declarants: Jany Leveille | |
| Source: John Doe 3 | |
| **Doc. 782, Ex. 2(b)** | |
| Objection: Confrontation Clause, relevance, | |

| | |
|---|---|
| and "mere narratives and idle chatter" | current status of the conspiracy, identified roles, and induced future involvement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| 18. Siraj ibn Wahhaj was glad God helped him take JOHN DOE from Hakima because JOHN DOE was really Jany Leveille's son that Hakima stole from her "stomach" by using "black magic"<br>Declarants: Siraj ibn Wahhaj and Jany Leveille<br>Source: Jane Doe 2<br>**Doc. 782, Ex. 31**<br>Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explained action about an event of importance, provided reassurance, and identified a fellow coconspirator. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| 19. Siraj ibn Wahhaj said he would fight the police, kill the police, and use guns<br>Declarants: Siraj ibn Wahhaj<br>Source: Jane Doe 2<br>**Doc. 782, Ex. 31**<br>Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explained the current status of the conspiracy, identifies roles, and discussed future intent. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| 20. Siraj ibn Wahhaj and Lucas Morton told the children not to talk about what happened to JOHN DOE<br>Declarants: Siraj ibn Wahhaj and Lucas Morton<br>Source: Jane Doe 3<br>**Doc. 782, Ex. 32**<br>Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintains cohesiveness, maintains the flow of information (or lack thereof), and avoids detection from law enforcement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| 21. Siraj ibn Wahhaj, Jany Leveille, Lucas | Having found all the named Defendants were |

| | |
|---|---|
| Morton, Hujrah Wahhaj, and Subhanah Wahhaj said they had to go to war—specifically Siraj said "he really wanted to go to war" and Jany said "it's better for them to start practicing [shooting for the war]" | parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explained action about an event of importance, informed the group about the current status of the conspiracy, identified coconspirators and their roles, and set future actions in motion. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Siraj ibn Wahhaj, Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj | |
| Source: Jane Doe 3 <br> **Doc. 782, Ex. 32** | |
| Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | The Court overrules the Defendants' combined objections. |
| 22. Siraj ibn Wahhaj, Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj said they had to go shoot the police | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies roles and identities of the coconspirators, explained action about an event of importance, informed the group about the current status of the conspiracy, and set future actions in motion. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Siraj ibn Wahhaj, Jany Leveille, Lucas Morton, Hujrah Wahhaj, and Subhanah Wahhaj | |
| Source: Jane Doe 3 <br> **Doc. 782, Ex. 32** | |
| Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | The Court overrules the Defendants' combined objections. |
| 23. Jany Leveille gave everyone a role at the compound—Jany was the messenger, Siraj was going to "take care of" non-believers, Hujrah was a supervisor, Lucas was a mentor, and Subhanah helped with cooking and cleaning | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies roles and identities of the coconspirators, informed the group about the current status of the conspiracy, and maintained trust and cohesion. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Jany Leveille | |
| Source: Jane Doe 2 and John Doe 2 <br> **Doc. 782, Ex. 32; Doc. 157, Ex. 1** | |
| Objection: Confrontation Clause, relevance, and "mere narratives and idle chatter" | The Court overrules the Defendants' combined objections. |
| **Statements made by coconspirator(s) on social media and via electronics** | |
| 24. Von Yusuf Leveille told Jany Leveille that "they know yall were going to New | The Court determined that Von Yusuf Leveille is an unindicted coconspirator in |

37

| | |
|---|---|
| Mexico" after sending her an Atlanta-area story about JOHN DOE's disappearance | Count 1. **Doc. 85**. As such, his communications with the Defendants that were "in furtherance of" this conspiracy are admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies roles, provides reassurance, and provided information to avoid detection by law enforcement. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Von Yusuf Leveille | |
| Source: Law Enforcement / social media **Doc. 157, Ex. 10** | |
| Date: December 22, 2017 | |
| Objection: Failure to prove Yusuf was a coconspirator | |
| 25. Jany Leveille texted her brother Von Yusuf Leveille "He [Allah] will throw fear into the heart of the shayateen [demons]. . . ." | Having found all the named Defendants were parties to each conspiracy, and that Von Yusuf Leveille is an unindicted coconspirator, this statement "in furtherance of" the conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement informs a fellow coconspirator of the current status, maintains the flow of information, and provided reassurance. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Law Enforcement / social media **Doc. 157, Ex. 10** | |
| Date: February 15, 2018 | |
| Objection: Failure to prove Yusuf or Subhanah Wahhaj were coconspirators | |
| 26. Subhanah Wahhaj called the concern for JOHN DOE "lies" and "deception" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement furthered the conspiracy by allaying the fears/suspicions of individuals and avoiding detection from law enforcement. *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendant's objection. |
| Declarants: Subhanah Wahhaj | |
| Source: Law Enforcement / social media **Doc. 157, Exs. 10 and 19** | |
| Date: January 2018 | |
| Objection: Failure to prove Subhanah Wahhaj was a coconspirator | |
| 27. Subhanah Wahhaj said everyone was fine, safe, healthy, and there was no need to worry | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Subhanah Wahhaj | |
| Source: Law Enforcement / social media **Doc. 157, Ex. 19** | |
| Date: January 2018 | |
| Objection: Failure to prove Subhanah Wahhaj was a coconspirator | |

| | The Court overrules the Defendants' combined objections. |
|---|---|
| 28. Subhanah Wahhaj requested $400 and said "DO NOT by any means contact anyone, especially my family members in regards to me contacting you" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Subhanah Wahhaj | |
| Source: Law Enforcement or "Abdur Rashid" **Doc. 157, Ex. 13** | |
| Date: July 2018 | |
| Objection: Failure to prove Subhanah Wahhaj was a coconspirator | The Court overrules the Defendant's objection. |
| 29. Subhanah Wahhaj said JOHN DOE's abduction was a "lie" and that Jessica and Nina should not believe it | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement allayed the fears/suspicions of others and avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Subhanah Wahhaj | |
| Source: Law Enforcement or "Jessica" (sister of Lucas Morton) **Doc. 782, Ex. 22** | |
| Date: November–December 2017 | |
| Objection: Failure to prove Subhanah and Hujrah Wahhaj were coconspirators | The Court overrules the Defendants' combined objections. |
| **Statements made by coconspirator(s) to law enforcement**[11] | |
| 30. Lucas Morton told Officer Bryan Donis that he lived on the land with only his wife and children | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement and thereby instilled trust and cohesiveness in the other coconspirators. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Lucas Morton | |
| Source: Officer Bryan Donis **Doc. 817, Ex. 33** | |
| Date: June 30, 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | The Court overrules the Defendants' combined objections. |
| 31. Lucas Morton told Officer Bryan Donis that he was entitled to live on the land he | Having found all the named Defendants were parties to each conspiracy, this statement "in |

---

[11] The statements analyzed herein were made by Defendants to various law enforcement officials. As an initial matter, the Court reasons there are no *Miranda* issues at play—as the Defendants' pleadings do not allege they were either in custody or being interrogated law enforcement. *See United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) ("Miranda requires that procedural safeguards be administered to a criminal suspect prior to custodial interrogation") (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *see also United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) (*Miranda* warnings are only required for custodial interrogation, and "custody" requires a degree of curtailed movement comparable to arrest).

| | |
|---|---|
| inherited from him creator because a court hearing was resolved in his favor. | furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Lucas Morton | |
| Source: Officer Bryan Donis | |
| **Doc. 817, Ex. 33** | |
| Date: June 30, 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | The Court overrules the Defendants' combined objections. |
| 32. Siraj ibn Wahhaj told the Alabama State Trooper they were going "camping" in New Mexico | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement allayed suspicions thereby avoiding detection by law enforcement. *Williamson*, 53 F.3d at 1520–21. |
| Declarants: Siraj ibn Wahhaj | |
| Source: Trooper Earnhardt | |
| **Doc. 157, Ex. 16; Doc. 782, Ex. 17** | |
| Date: December 13, 2017 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. Subhanah Wahhaj also objects absent proof she was part of the conspiracy at this time. | The Court overrules the Defendants' combined objections. |
| 33. Jany Leveille told the Alabama State Trooper they were travelling to New Mexico to see land owned by Siraj's brother-in-law | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identified a coconspirator, allayed suspicions, and avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21; *Rutland*, 705 F.3d at 1252. |
| Declarants: Jany Leveille | |
| Source: Trooper Earnhardt | |
| **Doc. 157, Ex. 16; Doc. 782, Ex. 17** | |
| Date: December 13, 2017 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. Subhanah Wahhaj also objects absent proof she was part of the conspiracy at this time. | The Court overrules the Defendants' combined objections. |
| 34. Lucas Morton told law enforcement "you guys think you are above the law, you guys are all going to get hurt, big time, I promise you" | This statement is admissible non-hearsay under Rule 801(d)(2)(A) as an opposing party's statement. |
| Declarants: Lucas Morton | This statement is inadmissible under Rule 801(d)(2)(E). While certainly relevant as to Lucas Morton's mental state and intent, there is insufficient evidence demonstrating how this statement was made in furtherance of any charged conspiracy. |
| Source: Taos County Sheriff's Office | |
| **Doc. 782, Ex. 27(a)** | |
| Date: August 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | The Court overrules the Confrontation Clause objection but agrees with the Defendants with respect to the Rule 801(d) objection. |
| 35. Jany Leveille, Hujrah Wahhaj, and | This statement is admissible non-hearsay |

| | |
|---|---|
| Subhanah Wahhaj nodded their heads in response to being asked if JOHN DOE had been at the compound | under Rule 801(d)(2)(A) as the opposing parties' statement.<br><br>This statement is inadmissible under Rule 801(d)(2)(E). Albeit relevant and admissible on other grounds, there is insufficient evidence demonstrating how acknowledging JOHN DOE's prior presence on the compound was "furthering" any charged conspiracy.<br><br>The Court overrules the Confrontation Clause objection but agrees with the Defendants with respect to the Rule 801(d) objection. |
| Declarants: Jany Leveille, Hujrah Wahhaj, and Subhanah Wahhaj | |
| Source: Taos County Sheriff's Office **Doc. 782, Ex. 29(a)** | |
| Date: August 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | |
| 36. Siraj ibn Wahhaj did not provide his name or anyone else's name | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Siraj ibn Wahhaj | |
| Source: Taos County Sheriff's Office **Doc. 782, Ex. 29(b)** | |
| Date: August 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | |
| 37. Jany Leveille, Hujrah Wahhaj, and Subhanah Wahhaj stated they "cannot talk about [JOHN DOE]" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement maintained trust between the coconspirators and avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21; *Rutland*, 705 F.3d at 1252.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille, Hujrah Wahhaj, and Subhanah Wahhaj | |
| Source: Taos County Sheriff's Office **Doc. 782, Ex. 29(a)** | |
| Date: August 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | |
| 38. Jany Leveille stated she had not seen JOHN DOE since last year's Eid celebration | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement avoided detection by law enforcement. *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Taos County Sheriff's Office **Doc. 782, Ex. 26** | |
| Date: August 2018 | |
| Objection: Confrontation Clause and not in furtherance of any conspiracy. | |

| Written statements made by Jany Leveille[12] | |
|---|---|
| 39. Jany Leveille's writings about JOHN DOE's death | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies fellow coconspirators, their roles, and discusses a future event (resurrection). *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Testament Book **Doc. 157, Ex. 4** | |
| Date: December 2017 | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 40. Hujrah Wahhaj's statement "It will be ok, Allah will take care of it!" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement provides reassurance to another coconspirator. *Rutland*, 705 F.3d at 1252.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Hujrah Wahhaj | |
| Source: Testament Book **Doc. 157, Ex. 4** | |
| Date: December 2017 | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 41. "Ibn Siraj and Luqman were ordered to go back to our home and wait for the assailants. There, Ibn Siraj and Luqman were ordered to ambush them and gun them down." | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies the coconspirators, their role, and sets a future action in motion. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Testament Book **Doc. 157, Ex. 4** | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 42. Jany Leveille's entries discussing roles, chores, and directions at the compound | Having found all the named Defendants were parties to each conspiracy, this statement "in |

---

[12] The entirety of Jany Leveille's journal, letters, and writings are admissible non-hearsay under Rule 801(d)(2)(A) as an opposing party's statement. *See generally Busch*, 758 F.2d at 1397 (explaining a defendant's own statements are admissible against her).

To the extent Subhanah and Hujrah Wahhaj helped edit Jany Leveille's journal, the Court is not foreclosing the possibility of admission against Subhanah and Hujrah Wahhaj under Rule 801(d)(2)(B). If the Government lays a foundation showing that Defendants adopted or believed the writings by Jany Leveille, then the writings are likely admissible on this ground (and against these Defendants) as well. At this point, the Government has not laid such a foundation, however, Defendants have not objected to admissibility on this basis either.

| | |
|---|---|
| Declarants: Jany Leveille | furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement identifies coconspirators, their roles and rules, and provides cohesiveness. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Source: Testament Book<br>**Doc. 157, Exs. 4 and 5** | |
| Date: February 2018 | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 43. "Having Ibn Siraj's support at all times, was crucial. It would also simplify the process of crushing Hakima's spells. However, there was one problem; Ibn Siraj would still have to visit [JOHN DOE] . . . Ibn Siraj benefitted from her absence . . . and quickly grabbed [JOHN DOE], along with his pistol" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, provides reassurance, and identifies coconspirators. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Testament Book<br>**Doc. 157, Ex. 4** | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 44. Jany Leveille "assigned" Hujrah an "important mission" of talking to Hakima to "cease practicing witchcraft" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, identifies coconspirators, and requests assistance to further the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Testament Book<br>**Doc. 157, Ex. 4** | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |
| 45. "It was crucial to escape rapidly. We contacted Hujrah, asking her to please hurry . . . . we started driving . . . . Ibn Siraj's car was positioned in the front, mine in the middle and Hujrah's in the back . . . . Subhanah and Luqman were already camping in the land" | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, identifies coconspirators, and requests future action. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' |
| Declarants: Jany Leveille | |
| Source: Testament Book<br>**Doc. 157, Ex. 4** | |
| Objection: "Mere narratives and idle chatter" | |

| | |
|---|---|
| as well as not in furtherance of the conspiracies | combined objections. |
| 46. Jany Leveille's letter to Muhammad Wahhaj | Having found all the named Defendants were parties to each conspiracy, this statement "in furtherance of" the multiple conspiracies is admissible against all Defendants under Rule 801(d)(2)(E). Specifically, this statement explains an event of importance, identifies coconspirators, and requests assistance to further the conspiracy. *Rutland*, 705 F.3d at 1252; *Williamson*, 53 F.3d at 1520–21.<br><br>The Court overrules the Defendants' combined objections. |
| Declarants: Jany Leveille | |
| Source: Clayton County Police Department **Doc. 157, Ex. 6** | |
| Date: January 2018 | |
| Objection: "Mere narratives and idle chatter" as well as not in furtherance of the conspiracies | |

## IV. Summary of rulings on coconspirator statements

The Court cautions the parties that these pretrial determinations are just that: pretrial determinations. These findings are the best that the Court can do pretrial given that evidence introduced at trial, including changes in witness testimony and the *James* proffer, may alter those determinations. Additionally, the exclusion of any specific statement, or category of statement, not addressed herein should not be construed as the Court ruling it inadmissible.

First, the Court determined twenty-three statements made by the Defendants to one another, friends, family, and the children were admissible under Rule 801(d)(2)(A), (E). Statement thirteen is inadmissible under the coconspirator exception given the Government's failure to prove how this statement to a school furthered the conspiracy's goals. The above-mentioned statements regarding the conspiracies' purpose and plan of attack were undoubtedly in furtherance of the conspiracies. Not only are there explicit statements of future intent for Counts 1, 3, and 4; but the overarching purpose of obscuring law enforcement from finding JOHN DOE is prevalent throughout the proffers. The remaining proffered statements discuss future intent, the status of the conspiracy, roles, rules, and concealing the conspiracies are also admissible under Rule 801(d)(2)(E).

Second, the Court determined six statements made by various Defendants on social media and electronic devices were admissible under Rule 801(d)(2)(A), (E). The Government provided notice of nineteen specific statements "amongst the defendants and with third parties" in their initial filing. The majority of these statements are inadmissible under Rule 801(d)(2)(E), because they are mere narratives, idle chatter, or messages the Defendants received—none of which are "in furtherance of" the conspiracies. That being said, the Defendants' responses (or lack thereof) could be admitted as statements of a party opponent under Rule 801(d)(2)(A) and (B) if a proper foundation is laid at trial. *See United States v. Franklin*, No. 03-10151, 2004 U.S. Dist. LEXIS 24072, at *11 (D. Kan. Aug. 26, 2004) (explaining a defendant can manifest adoption of a statement through words, conduct, or silence); *United States v. Lilley*, 581 F.2d 182, 187 (8th Cir. 1978) ("It is well established that, as a general rule, when an accusatory statement is made in the defendant's presence and hearing, and he understands it and has an opportunity to deny it, the statement and his failure to deny it are admissible against him."); *United States v. Lafferty*, 503 F.3d 293, 306 (3d Cir. 2007) (same).

Third, the Court determined nine statements made by the Defendants to law enforcement were admissible under Rule 801(d)(2)(A), (E). Primarily, each of these statements served to avoid detection and conceal their activities; however, statements thirty-four and thirty-five are inadmissible under the coconspirator exception given the Government's failure to prove how they "furthered" the conspiracies' goals. Those two particular statements are admissible against Lucas Morton whereas the remainder are admissible against all the Defendants.

Fourth, the Court determined the entirety of Jany Leveille's writings (testament book, handwritten book, and letters) were admissible as non-hearsay under Rule 801(d)(2)(A). To the extent the Government proves Subhanah and Hujrah Wahhaj helped edit these writings, they are

admissible against those Defendants under Rule 801(d)(2)(B). Additionally, the Court ruled that eight specific statements are admissible as coconspirator statements. In coming to this conclusion, the listing of the Defendants as the "righteous" as well as the book's descriptions of the group's intent and purpose undergird their admission. *Perez*, 989 F.2d at 1578–79; *Williamson*, 53 F.3d at 1520.

The Government offered three bases for admitting the recruitment letter from Jany Leveille to Muhammad Wahhaj. Having already decided it can be admitted as non-hearsay for "the significance of its creation and delivery," and as a "request," the Court also finds it is admissible as a coconspirator statement under Rule 801(d)(2)(E). *Cesareo-Ayala*, 576 F.3d at 1129; *Alcorta*, 853 F.3d at 1141; *United States v. Diaz-Menera*, 60 F.4th 1289, 1296 (10th Cir. 2023) (recruiting members is "in furtherance of" a conspiracy's objectives). The statement to not reveal (or alternatively, to conceal) the Defendants' location is in furtherance of all the conspiracies, whereas the statement about bringing "money" and "guns" so that can die a martyr by joining the Defendants' cause is in furtherance of Counts 1, 3, and 4.

Lastly, with respect to the objections on Confrontation Clause grounds noted throughout the pleadings, the Court finds the issue immaterial so long as the witnesses (John Does and Jane Does) testify at trial. *See Crawford v. Washington*, 541 U.S. at 59. If in-court testimony is elicited from the children, then the Defendants' objection to hearsay within hearsay is moot—and the coconspirator exception in Rule 801(d)(2)(E) carries the day.

## CONCLUSION

For the foregoing reasons, the Court finds that the United States has established by a preponderance of the evidence that a conspiracy existed; the charged Defendants and Von Yusuf Leveille were members of the conspiracies; and the statements the United States intends to

introduce at trial were made in the course of and in furtherance of the conspiracy. *See Owens*, 70 F.3d at 1123 (stating the three requirements for admitting coconspirator statements under Fed. R. Evid. 801(d)(2)(E)). Those statements offered for purposes other than their truth are admissible as non-hearsay. And of the forty-six specific coconspirator statements (identified in the previous section of this Opinion), forty-three are admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) and three are admissible as a statement made by the opposing party pursuant to Fed. R. Evid. 801(d)(2)(A). The United States' and Defendants' Motions are therefore **GRANTED IN PART** and **DENIED IN PART**.

     **IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE